## S. Davis Page, Appellant, v. William A. Simpson.

*Partnership—Evidence of partnership.*

An agreement by two partners to pay fifty cents per thousand feet on timber manufactured by the firm to a third person, in consideration of the latter exercising a sort of supervision over the affairs of the partnership, and giving the partners the benefit of his counsel and advice in the conduct of their business, but not giving him a controlling voice in the direction of the business, nor permitting him to participate in its profits, does not make such third person a partner with the others.

An agreement by a partnership to pay a certain sum per thousand feet on timber manufactured by the firm to a third person, in consideration of the latter indorsing the firm's paper to an amount not exceeding a sum specified, does not make such third person a member of the partnership.

*Judgment—Confession of judgment—Partnership—Security—Fraud in law—Fraud in fact—Interest.*

A partnership may give a judgment note to a third person to secure the latter from loss by reason of future indorsements of the firm's notes, and if the judgment note provides that judgment may be entered upon the insolvency of the firm, the payee may enter judgment for the full amount of the judgment note, issue execution and sell defendant's real estate, although the notes indorsed by him aggregating the amount of the judgment have not as yet matured, provided they mature and are paid by him before the sheriff makes title to the property sold.

Where the payee of a judgment note, acting honestly and in good faith, and merely to secure and protect himself against loss, enters up a judg-

ment note for an amount greater than the amount due him, and he does not claim or receive more than the amount actually due, the mere omission to enter credits on the judgment will not render it fraudulent and void as to other creditors of the maker.

The fact that the prothonotary in entering up a judgment note marked "interest from the date of the note," although no interest was specified in the note, and the payee's counsel in his confession of judgment did not claim it, and the payee never received any, will not render the judgment void.

Argued Oct. 25, 1898. Appeal, No. 23, Oct. T., 1898, by plaintiff, from judgment of C. P. Jefferson Co., May T., 1891, No. 180, on verdict for defendant. Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for 4437 acres of land in Polk, Eldred, Warsaw and Rose townships. Before REED, P. J.

The facts appear by the charge of the court which was as follows:

The plaintiff, S. Davis Page, has brought this action against the defendant, William A. Simpson, to recover the possession of certain lands situate in this county, the title and right of possession to which he claims is in him, and not in the defendant. The lands are particularly mentioned and described in the writ of summons, which has been offered in evidence, and it will not be necessary for us to make any further or more particular reference to them than to say that they are all in the same situation, and the plaintiff's right to recover applies with equal force and effect to each and every tract. He is entitled to recover all or none. His action must succeed to all the lands or fail as to all and, therefore, your verdict will be for the plaintiff for the lands described in the writ, or, it will be generally for the defendant. If you find for the plaintiff you will say, "We find for the plaintiff the lands described in the writ." If you find for the defendant you will merely say, "We find for the defendant."

It has been admitted by the parties, and that admission has gone upon the record, that the title to the lands in dispute was, prior to the year 1889, vested in Chandler P. Wainwright and Willis L. Bryant, and that both plaintiff and defendant claim through them as the common source of title.

The plaintiff, in support of his claim, offered in evidence a certain judgment obtained by the Spring Garden National Bank against Chandler P. Wainwright and Willis L. Bryant, trading as Wainwright & Bryant, for the sum of $17,834.25. It was entered in this court on an exemplification of record from Philadelphia county on September 20, 1890, and a writ of execution issued, by virtue of which the sheriff levied upon the lands in controversy, and thereupon an inquisition was held and they were condemned as not being of sufficient rental value to pay off the judgments and other liens entered against them, together with the interest and costs incident in such liens, within the space of seven years., The plaintiff in the judgment then caused a writ to be issued to sell the lands levied upon and condemned as stated, and in pursuance of this writ the sheriff did sell them on January 31, 1891, to S. Davis Page, the plaintiff in this case, for the sum of $271, and made and delivered to him a deed for the same, which was acknowledged in open court on February 12,° 1891.

If Wainwright & Bryant owned these lands at the date this judgment of the Spring Garden National Bank was entered against them, the judgment would thereby have become a lien upon the same, and the subsequent sale of the lands on that judgment to this plaintiff, and the acknowledgment and delivery of a sheriff's deed to him for them would have vested a good title to the lands in him so far as this action is concerned, and he would be entitled to your verdict. But the defendant alleges that Wainwright & Bryant had no title to the lands at the date of the entry of this judgment, and that the sale on it could not and did not pass any title to S. Davis Page, the purchaser, and, further, that the title was vested in him at the date of the entry of the Spring Garden National Bank judgment, and in support of this allegation he offered in evidence several judgments aggregating several hundred thousand dollars, entered against Chandler P. Wainwright and Willis L. Bryant in the fall of 1889, on which executions were issued and these lands levied upon and sold to him for $43,595, and deeds therefor acknowledged in open court and delivered to him by the sheriff on December 12, 1889, and May 15, 1890. You will observe that both these deeds were prior to the entry of the Spring Garden National Bank judgment. In addition to what he paid

for these lands at the sheriff's sale, he alleges they were sold subject to the liens of certain mortgages, aggregating about $150,000, which he either has or will be required to pay, so that the lands will cost him in the neighborhood of $200,000. He further alleges that the plaintiff bought the lands in controversy with full knowledge that Wainwright & Bryant, as whose lands they were being sold, had no title by reason of the prior sale to him, and that the title to the lands at that time was vested in him in consequence of such prior sales. In support of the allegation Judge CLARK was called and testified that he was present at the sale on the Spring Garden National Bank judgment, and that before the sale he read a notice to bidders setting forth that the lands had been sold by the sheriff on prior judgments to the defendant, William A. Simpson, in whom the title was vested at the time of the entry of the Spring Garden National Bank judgment, and that the purchaser at the sale on this last mentioned judgment would acquire no title to the lands. Upon the facts as stated it would be your duty to return a verdict for the defendant. The plaintiff does not, and indeed cannot, dispute or deny that the defendant, William A. Simpson, has the prior sheriff's deed for these lands. Both plaintiff and defendant claim that the lands were sold by the sheriff as the property of Wainwright & Bryant, and each claims title to the same by virtue of the sheriff's deed to him, and the defendant, being the purchaser at the first sale, and having the prior sheriff's deed, his rights to the lands in this respect would be superior to that of the plaintiff, and unless the plaintiff can show that the defendant did not acquire title at this sheriff's sale he cannot maintain this action.

[The plaintiff has undertaken, and the burden is on him to satisfy you by a preponderance of the evidence, that the title to the lands in question remained in Wainwright & Bryant at the date of the entry of the Spring Garden National Bank judgment against them on September 20, 1890, and that the title to the same did not pass to the defendant by virtue of the prior sales by the sheriff in December, 1889, and February, 1890. The plaintiff, S. Davis Page, in order to maintain this position, attacks the judgments on which the lands were sold by the sheriff to William A. Simpson, and especially the judgments of William A. Simpson, on two grounds.] [1] [In the first

place he alleges that William A. Simpson was a partner of Chandler P. Wainwright and Willis L. Bryant, the defendants in those judgments, and therefore could not, as against the creditors of the firm of which he was a member, take confession of judgment against his copartners and on those judgments sell the firm property and thereby remove it from the grasp of the firm creditors. Just here we may remark that we do not recall any evidence in this case showing that the real estate sold was partnership property, or that it was used as partnership property, or was even necessary in carrying on the firm business, unless such evidence is to be found in the agreement bearing date, I believe, January 14, 1885, being an agreement between William A. Simpson and Wainwright & Bryant. The title as recorded appears to have been vested in Chandler P. Wainwright and Willis L. Bryant, as tenants in common, and in these circumstances we are not prepared to say, even if William A. Simpson was a copartner, that he might not secure his individual debt against his copartners by confession of judgment and sale of their individual property thereon. But, we do not think the evidence will warrant a finding that he was a partner. This is a case in which we think a partnership in fact must be proved to avail the plaintiff, and those acts and declarations which sometimes make one who has been holding himself out as a partner liable as such to third persons, although no partnership in fact exists, cannot prevail in this case. The direct and positive testimony of the parties is that no partnership existed; that William A. Simpson was not a partner, and there is no proof that he was unless it is to be found in one or all of the three several agreements which have been offered in evidence. These agreements are in writing and their construction is for the court. The first agreement dated April 9, 1884, is an agreement by William A. Simpson to lend Chandler P. Wainwright and Willis L. Bryant certain sums of money, not exceeding in the aggregate the sum of $50,000, to enable them to carry on their lumber business, in consideration of their paying him interest at the rate of six per cent per annum on the sum or sums so loaned. This is about all there is in this agreement, and it is sufficient to say that it does not, in the remotest degree, tend to establish a partnership between the parties to it, or to constitute William A.

Simpson a partner of the firm of Wainwright & Bryant. The second agreement, bearing the same date, April 9, 1884, provides for the payment of fifty cents per thousand to William A. Simpson on all pine and oak timber cut by Wainwright & Bryant, in consideration of his exercising a sort of supervision over their affairs, and giving them the benefit of his counsel and advice in the conduct of their business. This does not constitute him a partner, but rather an employee of the firm. His compensation is fixed by the amount of business done but is in no way dependent upon the profits or losses of the firm. The more business done the greater will be the demand upon his time, and the greater his compensation. If there is little done there will be little required of him, and his compensation will accordingly be small. The agreement does not admit him to the exercise of the rights of a partner in any respect; he has no controlling voice in the management and direction of the business being carried on, is in no way required to share in its losses, nor is he permitted to participate in its profits, nor is his compensation depended upon whether the business is profitable or not. It may be said, generally, that the agreement is utterly barren of every feature of a partnership or of what would tend to make one a partner. The third agreement, January 14, 1885, may be said to be a hiring of credit. Wainwright & Bryant in this agreement obligate themselves to pay William A. Simpson the further sum of twenty-five cents per thousand on all pine and oak timber cut, in consideration of his indorsing their paper to an amount not exceeding $50,000. Without going into details, or making any extended remarks, we deem it sufficient to say that there is nothing in this agreement to make Mr. Simpson a partner. Whether these agreements are advantageous to Wainwright & Bryant is not material to the issue here. The parties were of full age and competent to contract, and it is none of our concern whether their contracts turned out well or ill for them. They certainly were not made for the purpose, and with the view, of defrauding creditors, because it does not appear that Wainwright & Bryant had any creditors to defraud at that time, or for several years thereafter, and so far as we are able to discover it would seem that the parties to these contracts entered into them because they supposed they would prove mutually beneficial; at all events they do not constitute

William A. Simpson a partner of Wainwright & Bryant, and this ground of attack on the Simpson judgment must fail.] [2] [This leaves for our consideration the single question of whether these judgments are fraudulent in law or fact. It has been said that where fraud is alleged a wide latitude is allowed in the admission of the testimony, but this does not mean that where fraud is charged it is to be taken for granted. It must be affirmatively and positively proved, like any other fact. It is not necessary that it should be proved by direct testimony, it may be proved circumstantially, but whoever alleges fraud has cast upon him the burden of establishing it by a preponderance of the testimony, either direct or circumstantial.

In this case we do not see that there is any material dispute as to the facts. There has been a large volume of oral and documentary evidence offered, and it is rather difficult to recall all or any considerable portion of it with a view of determining as to minor conflicts which may exist in it, but the general current of the testimony is plain and easily followed, and we think we may safely say that the controlling facts in the case are not in dispute, although hostile inferences are sought to be drawn from them. The firm of Wainwright & Bryant engaged in the lumber business in this county in 1884, and on the 9th day of April, 1884, William A. Simpson, the defendant in this case, entered into an agreement to furnish them money to carry on their business to an amount not exceeding $50,000 and, having, prior to November 14, 1884, furnished them the full amount of $50,000, on that date took their judgment note for the money so furnished, payable one day after date. The interest was regularly paid on this note every six months up to July 1, 1889, and, on October 26, 1889, the principal debt remaining unpaid, the note was filed in this court, and judgment confessed and entered thereon against Chandler P. Wainwright and Willis L. Bryant, the makers of the note, for the sum of $51,500, being $50,000 debt and $1,500 attorney's commission. The note as filed does not show the interest payments made thereon, and the attorney confessing the judgment does not in his confession include any interest on the principal sum; or claim interest from any particular date. It would seem that the prothonotary in entering the judgment on the record made an entry indicating that the judgment bore interest from November 14, 1884. This

date he evidently took from the face of the note and entered it upon the record as the date upon which interest was claimed, without direction from either the plaintiff or his attorney, and without anything in the confession of the judgment authorizing it. No claim for interest was ever made on the judgment by the plaintiff or any one else acting for him, and none was ever received. The mere fact that the prothonotary made such entry as to interest, and that the writ of execution went out bearing upon its face a claim for interest from November 14, 1884, would not render the judgment fraudulent and void, or deny to Mr. Simpson the fruits of an execution issued thereon. This seems to be the only direct attack made on this judgment for $51,500 and, as we have already stated, this of itself cannot and does not invalidate it either as to Wainwright & Bryant or as to their other creditors.

The next judgment in controversy was entered on a note given in pursuance of the agreement entered into January 14, 1885, between William A. Simpson and Chandler P. Wainwright and Willis L. Bryant, wherein William A. Simpson agreed to loan his credit to Wainwright & Bryant by indorsing their notes, and thereby enabling them to raise the money thereon, to the amount of $50,000, and as a protection and indemnity to him against ultimate liability on these indorsements, Wainwright & Bryant agreed, and in compliance with their agreement, did execute and deliver to him a judgment note dated January 14, 1885, for $60,000, payable one day after date. Among other stipulations contained in this agreement authorizing Mr. Simpson to confess judgment on this note and to issue execution, are the following : (1) for the amount of any matured note indorsed by him under the agreement and only protested, which said Simpson was not bound thereby to renew or which the holder should refuse to renew ; (2) in case of the insolvency of Wainwright & Bryant for the entire amount of outstanding notes indorsed by him.

It would seem, by the express provision in this agreement, that in the event of the insolvency of Wainwright & Bryant Mr. Simpson would have a right to confess judgment on this $60,000 note for the full amount of outstanding notes which had been previously indorsed by him. It has been proved, and we do not understand that there is any question or dispute about it, that Wainwright & Bryant became and were insolvent

on and prior to October 26, 1889. At this last mentioned date Mr. Simpson, according to the undisputed evidence, was liable on outstanding notes indorsed by him for the benefit of Wainwright & Bryant to an amount in excess of $60,000. The dates when these various notes were given, when they matured and the several amounts, have been given in evidence and we do not consider it necessary to refer to them in detail. In view of the insolvency of Wainwright & Bryant, and exercising a right which he had under the agreement mentioned, Mr. Simpson caused judgment to be entered on this $60,000 note on October 26, 1889, and an execution on the same. At that time the notes on which he was liable as indorser had not matured, and no part of his liability on these notes had been discharged by him. He proceeded, however, with his execution on this $60,000 judgment, and on this and other executions issued by him caused the real and personal estate of Wainwright & Bryant to be levied upon and sold. He testified, and his testimony is not controverted in this respect, that he lifted and paid the various notes on which he was liable as indorser, as they matured; and that the payments so made by him exceeded the amount of the note given to protect and indemnify him against such payments, and on which the $60,000 judgment was entered, and further, that he had paid and discharged a greater amount of these indorsed obligations at the date of his receipt to the sheriff for the sums realized from the sales of Wainwright & Bryant's property, than the amount so received.

It is contended here on behalf of the plaintiff that this $60,000 judgment was fraudulent and void in law, and that Mr. Simpson could not make use of it to sell the property of Wainwright & Bryant to the detriment and injury of their other creditors. This contention is based upon the legal position that the note on which the judgment was entered did not represent a subsisting indebtedness, but was held as a mere indemnity note for protection against ultimate liability, and inasmuch as no actual liability had been incurred and discharged at the time judgment was entered there was no right to proceed upon the note. We cannot accede or consent to this view of the law. To do so would, in many instances, render valueless the indemnifying obligation and defeat the very purpose for which it was given. It would be a hard rule of law that would compel one to stand

and look on while others seized and appropriated the only property of a debtor which could be made available for his protection in the ultimate and certain payment of that debtor's obligations, and for the payment of which he stood pledged, when he had within his power the means of protection, simply because the inevitable had not yet come to pass. The more just and equitable rule is to permit him to avail himself of the intended purpose of the indemnifying bond by causing judgment to be entered and execution to issue whenever it becomes necessary to do so in order to save himself from loss. And if he acts honestly and in good faith in so doing, neither claiming nor receiving more on such judgment and execution than he is justly entitled to, no creditor can be heard to complain that his rights have been interfered with or that he has been illegally deprived of the means of satisfying his claim against the common debtor. Holding these views, gentlemen of the jury, we instruct you that this $60,000 judgment was not and is not fraudulent and void in law, and, unless you find it to be so in fact under instructions hereafter given, you will treat it as a valid judgment on which the defendant, Mr. Simpson, had a legal right to issue execution, and to sell the property of Wainwright & Bryant thereon.

There is another judgment of $75,000 entered on a note given pursuant to a verbal agreement between these same parties, in which Mr. Simpson agreed to extend his liability beyond that provided for in the written agreement, and Wainwright & Bryant gave him a judgment note for $75,000 to cover and indemnify him for any other liability he might incur for them or indebtedness accruing from them to him. Judgment was entered on this note for the full amount October 26, 1889, when in fact there was only about $23,000 due on it. Mr. Simpson testifies that he was in Philadelphia at the time it was decided to proceed on his notes; that the notes were in a box in the bank at Lock Haven, and that he did not know or have the means at hand to determine just how much was due on this note. He further states that he never claimed or received on this judgment more than was justly due on it. If that is true, and if he acted honestly and in good faith in the matter, and merely to secure and protect himself against loss, the mere omission to enter the credits on the judgment would not render it fraudulent and void as to other creditors of Wainwright & Bryant

There is also a judgment of the State Bank of Lock Haven for about $122,000, entered at the same time as the other judgments we have mentioned.    You will recall the circumstances under which this note was given on which the judgment was entered.    Wainwright & Bryant had discounted in the bank for their benefit certain notes on which they were liable as indorsers, aggregating about $135,000, but by mistake this note was taken for $122,000 or $123,000 or about $12,000 less than the discounts amounted to in order to cover that contingent liability.    There is a large amount, in the neighborhood of $90,000 yet due the bank on that note.    The State Bank proceeded on the judgment against Wainwright & Bryant, confessed on this $122,000 note, covering their contingent liability as stated, but had not realized on this judgment or on the notes indorsed by them and covered by it any considerable portion of the indebtedness of Wainwright & Bryant to the bank.    What we have said as to the Simpson note will apply to this note.    If the bank was only trying to protect itself against a failing creditor, and received these notes in good faith for that purpose, and used them for that purpose, and did not take the notes for more than its officers honestly believed to be due, or in excess of Wainwright & Bryant's liability to it, contingent or otherwise, it had a right to do so, and it had a right to the benefit of the protection which those judgments afforded it, and to the fruits of the executions issued on them, and until it has realized on said judgment a sum equal to the amount justly due it the other creditors of Wainwright & Bryant have no just ground of complaint.

The confession of a judgment to a bona fide creditor, even though it be intended to and has the effect of giving him a preference over other creditors, is not a fraudulent disposition of an insolvent estate.    A failing debtor has a right to prefer one creditor over another by the confession of a judgment in his favor, and, where such preference is given and received, honestly and in good faith, other creditors have no standing to complain ; and where one in good faith takes a judgment for an amount which at the time he believes to be due him, it may be maintained against other creditors of such judgment debtor, even though it may be in excess of the amount actually due. Where, through inadvertence or mistake, the parties include

an item that is erroneous it will not vitiate the judgment so long as the creditor does not claim or receive on such judgment more than is honestly due him.

Under all of the facts and circumstances of this case we cannot say, as a matter of law, that the judgments in question were fraudulent and void. On the contrary, we instruct you that William A. Simpson and the State Bank of Lock Haven had a legal right to take those notes and to proceed on them in the manner they did, for their protection; that the consideration was ample and sufficient to support the notes, and if what they did, as detailed in the evidence here, was done honestly and for the purpose of protecting themselves against loss, and if the notes and judgments confessed thereon were not used for any other purpose, they did nothing unlawful. The judgments would be valid and the sales thereon would pass a good title to the real estate in controversy to William A. Simpson, the defendant in this case.

Now, gentlemen, this leaves for your consideration the single question of whether these judgments were in fact given or used in good faith and for the purpose we have indicated; or whether they were given or used for the purpose of defrauding, hindering and delaying the other creditors of Wainwright & Bryant in the collection of the just claims against them, and accordingly as you find on that question your verdict will be in this case.

We will not undertake to recall the facts and circumstances bearing on this question. It is not necessary that we should do so, because the testimony has been very fully reviewed and presented to you by counsel in their arguments, and the inference and construction placed thereon in support of their respective contentions have been elaborated and commented upon to such an extent as to refresh your recollection as to all the facts and circumstances respectively relied upon by them and to fully familiarize you with the same.

A fraudulent intent in the giving of these notes or in the subsequent use made of them is not to be lightly inferred and, while this intent may be disclosed by circumstance, they should be of a character to satisfy you of the actual existence of such fraudulent intent, and not merely of sufficient strength to create a suspicion of it. In determining this question it is the

combined or united strength of all the facts and circumstances
which is to control your finding, and not the individual items
of evidence which may mean much or little, accordingly as they
are considered in view of the whole evidence and taken in con-
nection with each and every other item of evidence.   To our
mind the evidence as to the fraudulent intent or purpose in the
giving of these notes or in the subsequent use made of them,
is rather shadowy, and not very apparent to us, but it is a
question of fact for you, and as such we submit it to you.   If,
upon the whole evidence, you find that these judgments which
we have particularly called to your attention were fraudulent
judgments, or that a fraudulent use was made of them in that
they were either given or used with the intent and for the pur-
pose of either defrauding or of hindering and delaying the other
creditors of Wainwright & Bryant in the collection of their
just claims, then we instruct you as a matter of law that the
sale thereon of the real estate in controversy would not pass a
good title to the defendant, William A. Simpson, and the plain-
tiff's title to the same would prevail, and your verdict should
be in his favor for the lands described in the writ.   But if you
find that these judgments were not fraudulent, that they were
given and used for an honest purpose, viz: to secure and pro-
tect the payees in the notes upon which the judgments were
confessed, and that no more was at any time claimed or received
on said judgments than was honestly and justly due, and that
the parties making use of those judgments acted honestly and
in good faith, then we instruct you as matter of law they would
not be fraudulent and void as to other creditors of Wainwright
& Bryant, and that a sale of their real estate thereon would pass
a good title to the purchaser, William A. Simpson, and your
verdict should be for the defendant.] [3]

Plaintiff's points and the answers thereto among others were
as follows:

1. If the jury find from the evidence that Wainwright &
Bryant were contemplating suspending payment of their debts,
and that they called William A. Simpson to Philadelphia and
there communicated to him that fact and presented a statement
of their assets and liabilities, and after canvassing the situation
for several days it was agreed that they would suspend payment
and that William A. Simpson then sent to Lock Haven, Pa.,

for his attorney, who immediately went to Philadelphia, and a judgment note in the sum of $122,000 filled up and signed by Wainwright & Bryant, payable to the State Bank of Lock Haven, and delivered to W. A. Simpson, the president of said bank; that it was there agreed that Simpson's attorney should take said note and also three notes held by W. A. Simpson signed by Wainwright & Bryant, aggregating $185,000, to Brookville, Pa., have judgments confessed and entered, and execution issued thereon for the full amount, when in fact the full amount was not either due or payable, and this was done before the claim of the Spring Garden National Bank, or other creditors' claims were due, and that it was done for the purpose of giving to Simpson, or the State Bank of Lock Haven, a preference, and to hinder, delay and defraud the Spring Garden National Bank and other creditors; if the jury find these facts from the evidence, then the sale of the real estate of Wainwright & Bryant upon the judgment of W. A. Simpson and State Bank of Lock Haven would pass no title to the purchaser as against the purchaser of the real estate upon a judgment of the Spring Garden National Bank subsequently made, and S. Davis Page being such purchaser, the verdict of the jury should be for the plaintiff. *Answer:* We have substantially answered this point in our general charge. There are certain things stated in this point which are consistent with a valid judgment or judgments, and we cannot say that a purpose to give Mr. Simpson and the State Bank of Lock Haven a preference over other creditors of Wainwright & Bryant would render their judgments fraudulent or void. We do say to you that if these judgments were confessed and accepted by them for the purpose and with the intent to defraud or to hinder and delay other creditors of Wainwright & Bryant, and not for the bona fide and honest purpose of collecting what was justly due to them, such fraudulent purpose and intent would render them fraudulent and void as to such creditors, and as thus explained this point is affirmed. [4]

3. If the jury find from the evidence that W. A. Simpson took part and assisted Wainwright & Bryant by his counsel, advice and advance of money to purchase machinery and a sawmill for the purpose of manufacturing lumber off of the lands formerly owned by Walter Bryant, deceased, and was to receive a share of the profits, then W. A. Simpson became thereby a

partner with Chandler P. Wainwright and Willis L. Bryant, in the firm doing business as Wainwright & Bryant, and would be jointly liable with them upon all debts of the firm, and the purchase of the real estate of said firm by him would confer no title as against the purchaser upon the sale of the judgment of the Spring Garden National Bank against Wainwright & Bryant, and S. Davis Page being such purchaser, the verdict of the jury should be for the plaintiff. *Answer:* Under the facts in this case this point is refused. [5]

5. If the jury find from the evidence that the note on which the judgment of the State Bank of Lock Haven v. Wainwright & Bryant, No. 172, December term, 1889, was entered, was given as collateral security to secure to the State Bank the payment of all notes discounted and held by said bank on which Wainwright & Bryant were either makers and indorsers, and that none of said notes were either due or payable at the time of the entry of said judgment and issue of the executions thereon, then no execution could legally issue thereon until the principal debt was due and payable for which said note was given to secure. *Answer:* We cannot assent to this proposition of law and the point is refused. [6]

8. As matter of law the seventeen notes, as follows: one dated July 9, calling for payment of $800, July 11, for $3,000, July 12, for $2,500, July 29, for $3,000, August 9, for 2,000, August 16, for $2,500, September 20, for $2,089.33, August 2, for $3,000, August 3, for $1,000, August 2, for $2,000, September 20, for $2,912.90, September 20, for $3,000, July 1, for $9,555.25, October 9, for $2,500, October 14, for $2,500, October 18, for $700, October 22, for $2,500, as given in evidence in this case, aggregating the sum of $35,757.48, are not liabilities on indorsements of W. A. Simpson for Wainwright & Bryant for which the note dated January 14, 1885, was given to secure, and such notes cannot be used to support the judgment entered to No. 170, December term, 1889. *Answer:* We cannot say as a matter of law what this point requests us to do and it is therefore refused. [7]

Defendant's points and the answers thereto among others were as follows:

1. There is no evidence in the case from which the jury would be justified in finding an actual partnership between the

defendant and Chandler P. Wainwright and Willis L. Bryant,
or that the defendant ever held himself out to the world as such
partner.  *Answer:* Affirmed. [8]

3. The fact that payments had been made upon the judgment
note or single bill for $77,250 prior to the entry of judgment
thereon, which were not credited at the time the judgment was
entered and execution issued thereon, does not per se make the
said judgment fraudulent and void as to the other creditors of
Wainwright & Bryant, but the neglect to enter said credit is
open to explanation, and if the jury believe the plaintiff, W. A.
Simpson, at the time of placing the single bill in the hands of
his counsel, had no knowledge of the amounts of said credits and
no means at hand of ascertaining the same; that within three
weeks thereafter, and prior to any sales upon his executions, he
ascertained the amounts of said credits and demanded and re-
ceived from the sheriff on distribution of the proceeds of sales
of personal property a pro rata rate upon no more of said judg-
ment than was actually due and unpaid, and that upon the dis-
tribution of the sales of real estate he claimed and received a
pro rata upon said unpaid balance, and that there still remains
unpaid about $9,000 of said judgment of $77,250, the explana-
tion is sufficient in law, and the jury cannot find said judgment
fraudulent as to other creditors of Wainwright & Bryant.  *An-
swer:* Affirmed. [9]

4. If a partnership had existed between Mr. Simpson and
Wainwright & Bryant, the real estate now in question was not
the property of said alleged firm, the titles having been in C. P.
Wainwright and W. L. Bryant as tenants in common, and Mr.
Simpson having paid no part of the purchase money, and the
attempt of Mr. Simpson to collect his honest claims against
Wainwright & Bryant by the sale of said lands was not fraud-
ulent as to creditors of the alleged firm.  *Answer:* We have
substantially affirmed this point in what we have already said
as bearing upon the question of partnership. [10]

5. By his purchase at the sheriff's sale the real estate in ques-
tion became the individual property of W. A. Simpson, and the
judgment of the Spring Garden National Bank having been
entered against C. P. Wainwright and W. L. Bryant, two of
the alleged partners alone, after the delivery of the sheriff's
deed to W. A. Simpson, the title so acquired by the latter could

not be sold upon said judgment, but only upon a judgment against Mr. Simpson himself. *Answer:* This point as an abstract proposition is affirmed. Of course if William A. Simpson had a good title to the property and it was afterward sold as the property of Wainwright & Bryant on a judgment entered against them subsequent to the sale and acknowledgment of the sheriff's deed to Simpson, such sale would not divest Simpson's title. [11]

6. There is not sufficient evidence in this case to warrant the jury to find that W. A. Simpson was a partner in the firm of Wainwright & Bryant, either as to themselves or as to the creditors of the firm. *Answer:* Affirmed. [12]

8. As to creditors who had no judgments entered against Wainwright & Bryant William A. Simpson had a right to take and receive out of the money made upon his executions all the money he had paid on the notes of Wainwright & Bryant given to and indorsed by him for them, against which the judgments were given to indemnify him, which he had actually paid before the judgment of the Spring Garden National Bank was obtained and entered. *Answer:* Affirmed. [13]

9. As the undisputed evidence shows that William A. Simpson did not claim or receive out of the proceeds of the sheriff's sale at any time more money than was owing to him by Wainwright & Bryant on the judgment given to him for indemnity against indorsements, his receipt of the money before the judgment was obtained on which plaintiff claimed title does not invalidate William A. Simpson's title. *Answer:* Affirmed. [14]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–14) above instructions, quoting them.

*H. Clay Campbell*, and *S. Davis Page*, for appellant.—A creditor of a partnership is at liberty to prove the fact of the partnership as he alleges it to be, without regard to the manner in which the parties have arranged their affairs between themselves. He is not concluded by the written contract or agreement as to the relation they sustain to each other: Reed, Craine & Co. v. Kremer & Co., 111 Pa. 482; Poundstone v. Hamburger, 139 Pa. 319.

Where the language of the charge as to the true character of

the testimony tends to mislead the jury, it is error, and a ground for reversal: Fawcett v. Fawcett et al., 95 Pa. 376; Burke v. Maxwell, 81 Pa. 139.

The expression that fraud is never to be presumed, but must be proved, though often used when addressing a jury, has led to much individual injury, and when to it is added " and the proof must be clear and satisfactory," it is calculated to mislead the jury: Devall v. Burbridge, 6 W. & S. 529; Kaine v. Weigley, 22 Pa. 170; Montgomery Web Co. v. Dienelt, 133 Pa. 585; Shaver v. McCarthy, 110 Pa. 346.

If the facts only were reviewed which tended to establish one side of the case, or if facts were supposed and submitted as if proved, when there was no evidence, there is cause for reversal: Reeves v. R. R., 30 Pa. 454; Garrett v. Gonter, 42 Pa. 143; Leibig v. Steiner, 94 Pa. 466; Price v. Hamscher, 174 Pa. 73; Lerch v. Bard, 177 Pa. 197; Larzelere v. Tiel & Tooley, 3 Pa. Superior Ct. 116.

A participation in profits directly as such is as to third parties or persons a partnership, whatever may be the arrangements between themselves: Edwards v. Tracy, 62 Pa. 374; Caldwell v. Miller, 127 Pa. 442; Gibb's Est., Hallstead's App., 157 Pa. 59.

*George W. Means,* with him *B. M. Clark,* for appellee, cited Mead v. Conroe, 113 Pa. 220; Kaine v. Weigley, 22 Pa. 184; Coyle v. Com., 100 Pa. 580; Irwin v. Bidwell, 72 Pa. 244; Walker v. Tupper, 152 Pa. 1; Heckert v. Fegely, 6 W. & S. 139; Edwards v. Tracy, 62 Pa. 374; Brown v. Jaquette, 94 Pa. 113.

PER CURIAM, November 7, 1898:

The manner in which this case was presented to the jury in the charge of the learned court below is worthy of much commendation. It was simple, lucid and comprehensive, and so clearly expressed that the most ordinary mind could easily understand it. The several questions of partnership, fraud in law, and fraud in fact were distinctly and plainly presented and explained to the jury so that they could not fail to comprehend what was said on these subjects. The ruling that there was no partnership was certainly correct, and so also that there was no

fraud in law. The question of fraud in fact was properly submitted to the jury who found by their verdict that there was no such fraud in the case. The assignments of error are almost exclusively criticisms upon the charge in sections. We cannot sustain any of them. The same is true of the answers to points. In our judgment they are all correct. Seeing no error in any respect we must affirm the judgment.

Judgment affirmed.