# HENRY L. JOHNSON

*vs.*

# WILLIAM S. PHILLIPS.

*Judgment by Confession—Motion to Strike Out—Endorsement on Note—Attorney's Fees.*

A judgment should not be stricken out on the mere *ex parte* affidavit of the defendant, but the court can decide the question on affidavits or testimony, as the court may order, although the latter is preferable.                    p. 21

An endorsement by which the endorser waives presentment, protest, demand of payment, and notice of non-payment, and guarantees the payment of the note, and agrees that "all of its provisions shall apply and bind me as though I were maker," makes him liable to suit as maker jointly with the signer of the note.                    pp. 22, 23

While the maker and endorser of a promissory note cannot ordinarily be joined in one action, they may enter into an agreement by which they can be so joined.                    p. 23

An endorser or guarantor of a note may, if he sees proper, waive his right to object to a suit against him and the maker jointly, as by failing to interpose the defense at the proper time.                    p. 23

If an endorser on a note, by the terms of the endorsement, agrees that judgment shall be entered against him without summons or process, he must take proceedings to relieve himself of an improper judgment promptly upon learning of it, and if he waits until after the expiration of the term at which the judgment is obtained, it is incumbent on him to explain the delay.                    pp. 23, 24

An endorser on a note cannot be permitted, after the expiration of the term at which a judgment against him was rendered, to contest the judgment merely because he was sued jointly with the maker, unless the court is satisfied either that

he did not know of the judgment in time, or could not, for some valid reason, take the necessary steps before the judgment became enrolled. p. 24

In an action on an endorsement on a note, by which the endorser waived presentment, protest, demand of payment, and notice of non-payment, and guaranteed payment, and agreed that the provisions of the note should bind him as if he were maker, the fact that the declaration failed to refer to the fact that the face of the note stated that it was a collateral note was immaterial. p. 24

A judgment against an endorser on a note, *held* wrongfully stricken out on a motion by such endorser, not made until five and a half months after the entry of the judgment, without any showing by him of a meritorious claim to have it stricken out. p. 24

The clerk has no authority, in a judgment by confession entered by him under Code, art. 26, sec. 6, to include or allow attorney's fees for collection of a note which, while providing for such fees, does not name the amount thereof, or state anything from which the clerk could ascertain the amount.

pp. 25, 26

A judgment by confession, entered by the clerk under the statute, with the assent of the parties or their attorneys, is not void *in toto* because it includes an improper item for attorney's fees. p. 27

*Decided March 15th, 1923.*

Appeal from the Circuit Court for Wicomico County (BAILEY, J.).

Action by Henry L. Johnson against William S. Phillips. From an order striking out a judgment by confession entered by the clerk under the statute, plaintiff appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Frederick H. Fletcher,* with whom were *Henry L. Johnson* and *Fletcher & Jones* on the brief, for the appellant.

*Frederick W. C. Webb,* with whom were *Woodcock & Webb* on the brief, for the appellee.

BOYD, C. J., delivered the opinion of the Court.

On March 28, 1921, Leon E. Venable gave Henry L. Johnson (appellant) a promissory note for $6,000 with interest from date, payable twelve months after date. Amongst other provisions in it, was the following:

"And I/we hereby authorize and empower any justice of the peace of the State of Maryland, in and for Dorchester County, or the clerk of the Circuit Court for Dorchester County, or any other county, at any time, to enter judgment on this note for the amount thereof, including debt, interest and costs and attorney's fees for collection, without summons or process; or if, in order to collect this note, it should become necessary to place it in the hands of an attorney I/we hereby agree to pay the attorney's fees for the collection thereof, even though judgment should not be obtained. The makers and endorsers of this obligation waive protest and notice of protest thereon."

Just below the signature of Leon E Venable is

"Up as collateral to discounted notes—any and all notes."

On the back of the note there is this endorsement:

"For value received, we, the endorsers named below, waive presentment, protest, demand of payment and notice of non-payment, and guarantee the payment of the within note, and agree that all of its provisions shall apply to and bind us as though we were makers.

"(Signed)    W. S. Phillips."

On July 8, 1921, in recess of the court, a judgment by confession was entered by the clerk of the Circuit Court for

Wicomico County in favor of the plaintiff (appellant) against Leon E. Venable and William S. Phillips for the sum of $6,100 with interest from date and costs, $7.75; collection fee $203.33, exemption waived, with stay of execution until March 28, 1922. On November 26, 1921, a motion to strike out the judgment was made by William S. Phillips, appellee, and an order *nisi* was passed by the court. The plaintiff (Johnson) answered under oath on December 19, 1921, and also filed an affidavit of Leon E. Venable. The same day the motion was heard and held *sub curia*. On May 24, 1922, an order of court was filed striking out the judgment against Phillips, and from that order this appeal was taken.

The reasons assigned for striking out the judgment were: (1) Because the note was endorsed by said Phillips on the understanding that it was to be held solely as collateral security for any notes which Venable might receive in payment of premiums on policies of insurance, which he then held, or might receive with their respective maturities on or before March 28, 1922, and which might be discounted by the plaintiff for said Venable; that in pursuance of said agreement the words "Up as collateral to discounted notes" were written upon the face of the note, and after the endorsement by this defendant the note was "fraudulently, wrongfully and unlawfully altered without the knowledge of this defendant" by adding the words, "any and all notes"; that Venable borrowed large sums of money from the plaintiff upon his individual note or notes, and fraudulently, wrongfully and unlawfully pledged the said note, endorsed as aforesaid by the defendant, to the plaintiff as collateral security therefor; that the alteration was a great surprise to this defendant and he first learned of it on the 25th of November, 1921, and of the pledging thereof in violation of the agreement on the 23rd of November, 1921. (2) Because the note was not due and could not be sued upon, or judgment entered thereon until its maturity. (3) Because the defendant, Leon E. Venable, is the maker of said note and the defendant, Phillips, is the endorser

thereon, in spite of which facts, judgment was entered jointly against them, contrary to law requiring the separation of the alleged rights of action against them.

The plaintiff filed an answer denying any knowledge of such an agreement or understanding between Phillips and Venable, and also denying any knowledge of any change in the contract which he says was the same as it was when he received the note, and he filed an affidavit made by Venable as part of his answer. For answer to the second paragraph of the motion, he set out the consent and agreement on the note, and he then stated the endorsement above quoted and said that Phillips constituted himself, in terms and effect, a maker of the note, and subjected himself to all the liabilities in law and in fact which attach to a maker, and there existed in this respect no distinction between the maker and the endorser. The affidavit of Venable contradicts Phillips as to the alteration and as to the understanding between them.

We have had some difficulty in determining from what is before us, what ground the lower court based its action upon, in striking out the judgment. No testimony was taken, and if the court acted on the motion filed by the defendant, Phillips (appellee), supported alone by his affidavit, on the one side, and the answer of the plaintiff (appellant) supported by his affidavit and that of Leon E. Venable, on the other side, it would seem to be impossible to sustain its action, as Phillips is contradicted in most material respects, and he unquestionably failed to show any knowledge on the part of the appellant of the alleged alteration on the note by the addition of the words "any and all notes," after the words "Up as collateral to discounted notes," or that the appellant had any reason to suspect such alteration, when he received the note. In 2 *Poe, Pl. & Pr.,* sec. 394, it is said that when the reasons assigned for striking out a judgment depend upon extrinsic facts or matters not apparent from the record, the motion should be verified by the affidavit of the party making it, or some one on his behalf, and the affidavits of other par-

ties may also be filed; that due notice must be given and the motion set down for hearing, and that in the meantime counter-affidavits may be filed by the opposite party, or testimony taken before a commissioner of the court, or one agreed upon, or in open court, if the court so determines. So, although this court has said that a judgment ought not to be stricken out on the mere *ex parte* affidavit of the defendant (*Foran* v. *Johnson*, 58 Md. 144; *Huntington* v. *Emery*, 74 Md. 67; *Gesey* v. *Stouch*, 94 Md. 75), under our practice it can decide the question on affidavits or testimony, as the court may order, although the latter is preferable.

But there is nothing to show how the court determined to hear the motion, or whether it considered the affidavits. In the brief of the appellee it is contended that the declaration ignored the statement on the note—"Up as collateral to discounted notes," etc.—and it is said "the court below evidently took the view, that such omission was a fatal defect and variance and invalidated the entire proceeding." Inasmuch as we cannot understand how the court could have struck out the judgment on the facts as presented in the record, we assume that it must have been on the theory, as suggested in the appellee's brief, or on the one that a joint judgment could not have been entered on the note—in other words on the face of the papers and not on extrinsic matters.

The appellee also suggested that the note was negotiable, and hence the judgment could not have been entered before maturity, relying apparently on *Edelen* v. *First Nat. Bank*, 139 Md. 422. But JUDGE URNER very clearly pointed out why the negotiability of that note was not affected by the terms used. He said, "If the provision was simply that the judgment might be obtained 'at any time,' the contention would have to be sustained," but as the language "for such sum as may be due" came after "at any time," we held that the two together meant "that the entry of the judgment can only occur after the note has matured," and hence the negotiability of the note was not impaired. In this case, as seen

above, the note did not contain such a provision, and hence the judgment could be entered at any time—its negotiability being thereby destroyed.

We do not deem it necessary to enter upon a discussion as to whether Phillips was a guarantor or simply an endorser, as it seems to us that the form of the endorsement made him liable to be sued as a maker. The case of *Emerson* v. *Aultman & Co.,* 69 Md. 125, while differing from this in some respects, is so analogous to it that we will quote from it at some length. On the back of the note of George S. Powell, in that case, was this endorsement: "For value received I hereby guarantee the payment of the within note at maturity, and any renewal of the same, and hereby waive protest, demand, and notice of demand and non-payment, and suit against the maker, and consent that the payment of this note may be extended from time to time, without affecting my liability thereon. JUDGE MILLER, who delivered the opinion of this Court, said that "in case of an ordinary and usual guaranty, as where one contracts in writing to be answerable for goods sold to a third party, or where, in like manner, one engages to pay a note in case the maker fails to pay the same, the contract of guaranty must be declared on specially, and it cannot be given in evidence under the common counts in assumpsit." Then he said, on page 135: "We do not see what else he could have waived or agreed to, in order to make his obligation to the plaintiff just as absolute and unconditional as if he had signed the note as joint maker with Powell, when it was executed. Such, in our opinion, is the true construction and effect of this instrument, and it is conceded that if this be so, it would be admissible in evidence under the common counts of this declaration." He went on to say that the obligation then before the court was a peculiar one and differed widely from that of an ordinary guaranty, and referred to what we have quoted above. So, in this case, when Phillips, after waiving all that he did waive, and guaranteeing the payment of the note, agreed that all the provi-

sions of the note should *apply to and bind him as though he was the maker,* it would be difficult to distinguish the principle of the *Emerson* case from this. It is true that it is not said in the endorsement, in so many words, that there can be a joint confession of judgment entered against Phillips and Venable, but if the provisions in the note as to entering judgment "shall apply to and bind us as though we were makers," as Phillips agreed they should, did he mean that separate judgments should be entered against him and Venable, and not a joint judgment? It was a very unwise thing for anyone to agree to, when he made himself responsible under the terms of that note, but it would be even more so for him to provide that a judgment could be entered against him, and not against Venable. It is true that this Court, as well as many others, has said that the maker and endorser of a promissory note cannot ordinarily be joined in one action (*Harvard Pub. Co.* v. *Benjamin,* 84 Md. 333), but we know of no reason why they cannot enter into an agreement by which they can be so joined; and, at least as far as the method of procedure is concerned, the terms of this endorsement are broad enough to permit of the construction that it was intended that a joint judgment could be entered.

But if it be conceded that the appellee's construction of the endorsement is the correct one, and that he could only be treated as an endorser, or guarantor, it cannot be denied that an endorser or guarantor can, if he sees proper, waive his right to object to a joint suit. If he did not interpose the necessary defense at the proper time, he could not raise the question afterwards, even if he was being sued jointly with the maker in the usual way, by being summoned, etc. As the appellee agreed that judgment should be entered against him, without summons or process, he should at least be required to take proceedings to relieve himself of an improper judgment, if he conceived this to be such, promptly after he knew of it. As he waited until after the expiration of the term at which the judgment was obtained, it was incumbent upon

him to explain the delay. Having failed to do that, as he
undoubtedly did, he would not be permitted to contest a
judgment of this kind, merely because he was sued jointly
with the maker, after the expiration of the term at which it
was rendered, unless the court was satisfied either that he
did not know of the judgment in time, or could not, for some
valid reason, take the necessary steps before the judgment
became enrolled. We think that a fair rule to adopt for such
cases is, that the time to take such steps should ordinarily be
fixed as during the term at which the judgment was entered,
just as in an ordinary suit at law, a defendant may be re-
quired to take certain action by rule day or by some other
time established by the practice of the court.

So far as the objection made by the appellee is concerned,
that the note could not be offered in evidence, as there would
be a variance, the *Emerson* case effectively disposes of that.
Nor can there be any difficulty by reason of the declaration
not showing that it was a collateral note. While it would
be good practice, it is not necessary to file an agreement
stating the conditions upon which the note was executed.

If the court did base its action on affidavits filed by the
time of the hearing (of course those filed later could not be
considered), that of Venable did show that the appellee knew
of the judgment by January 12 or 13, and it is not attempted
to explain why he did not make his motion sooner. He did
not file it until November 26th, five months and a half after
the judgment was entered. Even if we treat the appellee's
statement as to November 23rd and 25th as an implied denial
of his going to the clerk's office in July to examine the papers
in the case in which the judgment was obtained, the burden
was on him and he did not meet it. He did not even show
that he had a meritorious claim for asking to strike out the
judgment, as even if he is not responsible for the individual
notes of Venable, he does not deny his going on the note
sued on as collateral for notes for insurance premiums, and
did not show that he is not responsible for the whole of the
judgment, or if not for all of it, how much.

It is manifest, therefore, that there was error on the part of the lower court, if he based his action on matters extrinsic of the record, but it seems clear that he did not, and that he relied on the technical questions referred to. From what we have stated above, it will be seen that in our opinion the court was not authorized to strike out the judgment on the ground of its invalidity, as we cannot agree with the court as to that.

By reason of the conclusion we have reached, we must reverse the order of the lower court, but we will refer to a question which was not mentioned as one of the grounds for striking out the judgment but, as it appears in the record, we deem it proper to speak of it. Whether or not it was intended to be a part of the judgment, we might have thought was possibly an open question, except for the fact that in the consent filed by Mr. Willis, as attorney for the plaintiff, that the clerk enter the judgment on the note for the plaintiff, there is included "Two hundred and three dollars and thirty-three cents ($203.33) attorney's fee" and the further fact that the docket entries show: "1921, July 8. In recess, judgment by confession in favor of the plaintiff and against the defendants for the sum of $6,100.00 with interest from date and costs, $7.75; Coll. Fee, $203.33. Exemptions waived, with stay of execution until March 28, 1922." In our judgment there was no justification whatever for including what the docket entries refer to as "Coll. Fee $203.33." In the first place this was shown on its face to be merely what is known as a collateral note—intended to secure "discounted notes." The judgment was entered over eight and one-half months before the note matured, and it was then impossible to say whether there would be any occasion for an attorney collecting the judgment or the note from Phillips. If the notes for which it was intended as collateral security were paid, or Mr. Phillips paid at maturity what he was responsible for, if anything, there could, of course, have been no excuse for requiring or suggesting the payment of attorney's fees.

But beyond that, there is no authority for the clerk to include or allow, in a judgment entered by him under our statute, attorney's fees for collection of a note reading as this does—"and attorney's fees for collection"—without naming any amount, or stating anything from which the clerk could ascertain the amount. As some of the authorities we will refer to speak of a warrant of attorney, it may be well to recall that in *Tyrrell* v. *Hilton,* 92 Md. 176, 186, JUDGE PEARCE said that the practice in this State has never required a warrant of attorney. He also said that "the assent required may be by means of the proper signatures of both parties, or the signatures of the attorneys of both, or by the proper signature of one party, and the signature of the attorney of the other." He also said that "the authority of the clerk to enter the judgment is derived, not from the parties, but from the statute," the parties having given their assent to the confession of judgment, and the other necessary papers being filed.

In 1 *Black, Judgments,* sec. 75, after stating that a judgment entered by confession, upon a warrant of attorney, may include fees to the attorney appearing in the case, if authorized by the power, and that it is altogether usual to incorporate a stipulation for such fees in the warrant, it is said: "Such a provision rests upon a valid consideration, and is not fraudulent as to other creditors; unless the amount designated as attorney's fees is grossly in excess of any reasonable amount, in which case the judgment, at least to the extent of such fees, is fraudulent and void as against the other creditors of the defendant. And the attorney's commissions authorized in a judgment-note cannot be collected as part of the debt due when the debtor was ready to pay at the maturity of the note." It is also said in that section that it is customary to specify in the warrant or note the sum which may be incorporated in the judgment as a fee for the attorney, but that cases have sometimes come before the courts, in which the provision, instead of being explicit, merely designated a

"reasonable attorney's fee." "This language, it is held, gives to the court in which the confession is made, the right to determine what is a reasonable fee; it does not leave it to the option or the conscience of the attorney; it contemplates a judicial proceeding by the court for the purpose of ascertaining the amount which may reasonably be charged up. Hence if the attorney himself fixes the sum of his fees, under a power so worded, and confesses judgment for the whole, he acts in excess of his authority, and the judgment so entered, without the intervention of the court, is void."

The same in substance is stated in 23 *Cyc.* 719; 11 *Ency. of Pl. and Pr.* 1013, 1014 and 1015. On the page last cited, it is said that, when the clerk is authorized to enter judgment without the agency of an attorney, he "may exercise the power only when the amount due appears on the instrument or can be rendered certain by calculation from its face."

We do not understand that the statement in 1 *Black,* sec. 75, and 23 *Cyc.* 719, *supra,* means that the whole judgment is necessarily void, but at most that it is voidable as to the fee—unless there was fraud. In 1 *Black,* sec. 73, it is said that "where a judgment is entered on a warrant of attorney and includes a greater sum than was actually confessed, it is held to be void only as to the excess, not in toto, unless the excess was fraudulently included." 23 *Cyc.* 718. See also *Hulse* v. *Mershon,* 125 Ill. 52, 17 N. W. 50; *Merchants Nat. Bank* v. *Newton Cotton Mills,* 115 N. C. 507, 20 S. E. 765; *Paige* v. *Simpson,* 188 Pa. 393, 41 Atl. 638. In *Harris* v. *Alcock,* 10 G. & J. 226, 250, our predecessors had before them two decrees passed in cases which alleged that a judgment was fraudulent and void. It was confessed to a creditor as security for debts due him and two other creditors. Execution was issued on the judgment, and it was attacked on the ground that one of the debts intended to be secured by the judgment was paid before the execution was issued. In passing on that, the court said: "The simple fact of issuing an execution for more than is due on a judgment does not *per*

*se* render the execution fraudulent and void. It is by the *quo animo* with which it issued that its validity is to be tested. If issued with a fraudulent intent, it is void, but if issued *bona fide* it is not void, and will be available for the plaintiff to the extent of the debt remaining due on the judgment."

Without further prolonging this opinion on the subject, it is sufficient to say that the clerk had no power to include in the judgment or to name the amount of attorney's fee in a case of this kind, where the note does not fix the amount, and the item for the $203.33 must be stricken out, regardless of what may be done by the court below in reference to other matters.

Being satisfied that the lower court struck out the judgment because it thought it was invalid and not properly entered, and that so far as we can determine from the record the other causes assigned by the appellee for striking out the judgment have not been acted upon by the court below, we will reverse the judgment and remand the cause, so that it will be competent for that court, upon re-instating the judgment, to dispose of questions not determined by us in this opinion, as justice and right may require. In doing so, we follow the course adopted by this Court, through JUDGE ALVEY, in *Kimball* v. *Harman,* 34 Md. 401.

> *Judgment reversed and cause remanded, each side to pay one-half of the costs in this Court, the costs below to abide the final result.*