## MEYER *v.* GYRO TRANSPORT SYSTEMS, INC.

[No. 77, September Term, 1971.]

*Decided November 17, 1971.*

*Motion for rehearing filed December 17, 1971; denied January 10, 1972.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and DIGGES, JJ.

*Clyde Christopher Henning,* with whom were *Louis Draper Harrington, Edwin Jason Dryer* and *Myers & Henning* on the brief, for appellant.

*Joseph D. Tydings,* with whom was *Robert A. Klein* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

In this appeal, the appellant, Daniel H. Meyer, contends that the Circuit Court for Montgomery County (Shook — now DuFour, C. J.) erred in declining to vacate a judgment, by confession, entered against him and others on October 13, 1970, in the amount of $747,612.19, with interest from October 8, 1970, plus the sum of $101,-831.25 as attorney's fees and $24.00 court costs.

The original note, dated July 1, 1968, was for $750,-000.00, with interest at 6% per annum. Gyro Dynamics Corporation, Gordon I. Hyde, Albert Crane, Daniel H. Meyer and Charles Murano were makers, liable jointly and severally. The appellee, Gyro Transport Systems, Inc. (Gyro Transport) was payee. There were provisions in the note for installment payments and for acceleration upon default. It was also provided that there be no penalty for prepayment prior to maturity. The final provision in the original note was:

> "In the event an action is brought by the holder of the note to collect any sums due under the said note the makers agree that in addition to the sums adjudged to be due, the makers agree to pay the reasonable costs of said action, including a reasonable attorney's fee based upon the actual time required to be spent in reducing the said note to judgment at the average hourly rate charged for legal services as recommended by the Bar Association in the jurisdiction in which the said judgment is granted."

The original note was amended on February 19, 1970. The written amendment indicates that the second installment of $200,000.00 on January 1, 1970, had not been paid as a consequence of which the payee of the original note had accelerated the payment of principal and in-

terest, and that in consideration of forbearance by the payee of commencing litigation to collect the note, the makers (except Albert Crane) and the endorser [Summers Gyro Corporation] would (1) pledge all of the stock of F.A.E. Instrument Corporation as additional security for the note, (2) pay the entire balance on October 1, 1970, whether or not the proposed underwriting and sale of stock of the F.A.E. Instrument Corporation was successful, and (3) would amend the original note "to a Confession of Judgment note in accordance and compliance with the laws of the State of Maryland." The provision for Confession of Judgment is as follows:

> "The undersigned authorize and empower any attorney to appear in any Court of Record in the United States for the undersigned obligors, after the obligation becomes due, whether by due date or acceleration, and waive the issuing and service of process and confess a judgment against the undersigned as joint and several obligors in the amount then appearing due, together with costs of suit and reasonable attorneys' fees. The undersigned hereby waive and release all errors and rights of exemption, appeal and stay of execution."

The amendment further provided that the note, as amended, should be "construed and enforced in accordance with the laws of the State of Maryland" and that "[e]xcept as specifically modified by this Amendment, the obligations and provisions of the original terms of the Note of July 1, 1968, remain unchanged."

The original note, as amended, not having been paid on October 1, 1970, Gyro Transport, the payee, filed its declaration and promissory note and amendment in the Circuit Court for Montgomery County as "Confessed Judgment No. 10605" with the following instruction to the Clerk:

> "Mr. Clerk,
> Please docket suit as above indicated, file narr

and promissory note and amendment to note herewith, enter the appearance of Robert A. Klein attorney for Plaintiff and Mitchell S. Cutler, attorney for defendants, then enter judgment by confession against the defendants, jointly and severally, and in favor of plaintiff in the amount of $747,612.19 with $68,797.19 representing interest to October 8, 1970, and legal interest thereafter, plus the costs of this action and an attorney's fee of $101,831.25, being 15% of the principal sum.

/s/ Mitchell S. Cutler
MITCHELL S. CUTLER
Attorney-in-fact for Defendants
1120 Connecticut Ave., N. W.
Washington, D. C. 20036
(202) 333-8700

/s/ Robert A. Klein
ROBERT A. KLEIN
Attorney for Plaintiff
1120 Connecticut Ave., N. W.
Washington, D. C. 20036
(202) 333-8700"

Mr. Cutler is a member of the same law firm as Mr. Klein. Mr. Klein made the affidavit in regard to the amount due on the note and interest "plus reasonable attorneys fees and costs" and stated that the defendants were not in the military service.

Upon entry of the confessed judgment in the amounts set forth in the instruction to the Clerk, summons to the November return day was mailed, on October 13, 1970, by registered mail to Mr. Meyer, the appellant, in Salt Lake City, Utah. This summons was delivered to Mr. Meyer on October 19, 1970, the return receipt being signed by his wife, Mrs. Meyer.

Mr. Meyer on November 30, 1970—some 41 days after the receipt of the summons — sent a telegram to the Clerk, stating that an "Answer" had been mailed. The

"Answer" was received by the Clerk on December 2, 1970. Counsel for the plaintiff, Gyro Transport, treated the "Answer" as a motion to vacate the judgment, rather than as a plea, and on January 21, 1971, filed an Answer to that "Motion." Later, Mr. Meyer engaged Maryland counsel and on March 10 filed a formal motion to vacate the judgment of October 13, 1970, for lack of jurisdiction over Mr. Meyer, or, in the alternative, to permit Mr. Meyer to file pleas and try the case on the merits.

Prior to filing the formal motion to vacate, Mr. Meyer on February 23 had filed his affidavit, with an exhibit, apparently in support of his "Answer" filed on December 2. After reciting that he is a resident of Salt Lake City, Utah, and giving his address, Mr. Meyer stated in his affidavit that, after receiving the summons on October 19, he consulted with Gordon I. Hyde, one of the defendants, president of Gyro Dynamics Corporation and a member of the Bar of Utah practicing in Salt Lake City, and pointed out to him that the summons specified that if the defendant, Meyer, had any valid objection or defense to the judgment, such objection or defense must be filed with the Clerk of the Circuit Court for Montgomery County within 30 days after service of the summons on him. After a series of conferences with Mr. Hyde during the latter part of October and the first part of November, Mr. Hyde told Mr. Meyer that Mr. Hyde had arranged with Raymond Dickey, a member of the law firm with whom Mr. Klein, the attorney of record for the plaintiff, is associated, that the time for the defendant "to answer or otherwise plead" had been extended to and including December 1, 1970. Mr. Meyer had been busily occupied with business affairs during November, had been out of the State of Utah for much of the time, and had relied entirely on the extension of time in preparing his Answer, which was forwarded to the Clerk by Registered mail on November 30, when Mr. Meyer also sent the Clerk a telegram that the Answer had been sent. The affidavit then sets out his defense to the action on

the note which basically was a total failure of consideration, which was the subject matter of an action pending in the Superior Court of California, County of Los Angeles, the pleadings in the California case being attached and made a part of the affidavit. This defense, as well as a failure of the plaintiff to exhaust the collateral and an alleged agreement of Gyro Dynamics Corporation, with the plaintiff's knowledge and consent, to indemnify Mr. Meyer and save him harmless, were alleged in the "Answer" filed on December 2 by Mr. Meyer.

In the answer of Gyro Transport to the document of December 2, it was alleged that Gyro Transport was not required to exhaust the pledged security prior to proceeding against the makers; that there was sufficient consideration by the transfer of patents and forbearance to sue; that the California proceedings did not affect the validity of the note; and that any agreement which Mr. Meyer might have with any third person had no bearing on the claim against Mr. Meyer on the note, so that there being no meritorious defense to the action on the note, the judgment should be allowed to stand and Mr. Meyer should not be permitted to file his plea.

At the hearing before the lower court on March 12, 1971, that court indicated that it had reviewed the papers in the case prior to the hearing and then heard argument by counsel for the respective parties. Counsel for Mr. Meyer made the point that Mr. Cutler had signed the instructions to the Clerk as "Attorney-in-fact" for Mr. Meyer. This practice, Mr. Klein stated, was required by the Clerk of the Circuit Court for Montgomery County on the theory that the authorization in the note only appoints the person appearing as an attorney-in-fact and apparently not as an attorney-at-law. When the lower court was advised that Mr. Cutler, in any event, was a member of the Maryland Bar, this possible defense was rejected. It was also argued that it was within the lower court's discretion to permit Mr. Meyer to plead. Mr. Klein suggested that in view of the 30-day time limitation in Maryland Rule 645 b, the lower court might not

have jurisdiction to hear the case and the lower court indicated that it did not think it did but would take the matter under advisement, "look into it and see what it is." On March 17, 1971, the lower court filed an order denying the motion of Mr. Meyer to vacate the judgment. A timely appeal was taken to this Court from that order.

The trial court did not dictate to the court reporter the grounds of the decision as required by Rule 18 c.

Three questions will be considered by us:

> (1) Did the lower court err in not finding that fraud, mistake or irregularity under Rule 625 existed in the obtention of the judgment?
>
> (2) If there was no such error, was the entry of judgment for $101,831.25 as an attorney's fee clearly in error?
>
> (3) Is the Maryland confessed judgment law so restrictive and arbitrary as to amount to a taking of property without due process of law as prohibited by the Fourteenth Amendment to the Federal Constitution?

We will discuss these issues in the order indicated.

## (1)

Rule 645 b provides, in part, that:

> "Immediately upon entering any such judgment [a judgment by confession in accordance with section a] the clerk shall issue a summons for the defendant notifying him of the entry of the judgment and requiring him to appear in the cause wherein it is entered within thirty days after the service upon him of the summons and show cause, if any he has, why the judgment should be vacated, opened or modified. * * * If no cause is shown in pursuance of the summons, the judgment shall be deemed to be final, to the same extent as a judgment entered after trial, but may be set aside or modified pursuant to

Rule 625 (Revisory Power of Court over Final Judgment)."

Section c of Rule 645 in regard to a Nonresident Defendant provides:

"If the affidavit filed in the proceedings shows that the defendant is not a resident of Maryland, the clerk shall send by registered mail to such defendant at his address indicated in the affidavit a summons similar to that prescribed in section b and it shall be the duty of the defendant to respond to such summons within thirty days after the receipt thereof; or the plaintiff may, if he so elects, provide for the personal service of the summons upon the defendant, wherever he may be found, and file in the proceedings an affidavit showing the time and place of such service. Such personal service shall have the same effect as if the defendant had been summoned in the manner prescribed in section b."

Section f in regard to Extension of Time provides:

"The court may, for good cause shown, extend the time for responding to any summons or notice issued pursuant to this Rule."

Rule 625 a provides:

"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

There is no dispute that Mr. Meyer received the summons on October 19, 1970, and that he knew and under-

stood from it that he must show cause why the confessed judgment should be vacated, opened or modified within 30 days from October 19. It is also undisputed, and the docket entries clearly show, that Mr. Meyer's "Answer," which in effect was a motion to vacate the judgment of October 13 and to have a hearing on the defenses raised in the "Answer," was not filed until December 2, 1970, or 43 days after the receipt of the summons on October 19. The 30-day period during which the lower court had revisory power and control having expired, the revisory power and control of the lower court over the judgment shall, by Rule 625, only exist in case of "fraud, mistake or irregularity."

After a judgment has become enrolled 30 days from its entry, Rule 625 a embraces all of the power the court has to revise and control that judgment. As we said in *Eliason v. Commissioner of Personnel,* 230 Md. 56, 59, 185 A. 2d 390, 392 (1962) :

> "Regardless of the distinction — generally based on equitable considerations — the courts in other jurisdictions draw between the judicial act of *opening, striking out* or *setting aside* a judgment, we think it is clear that the language of the Rule, which merely restates in substance the rule at common law, embraces all the power the courts of this State have to revise and control enrolled judgments and decrees."
> (Emphasis in the original opinion.)

See *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960) and *Williams v. Snyder,* 221 Md. 262, 155 A. 2d 904, 157 A. 2d 265 (1959).

We now turn to the question, whether the lower court erred in not finding fraud, mistake or irregularity to exist. We find no error in this regard.

Judge Singley, for the Court, in *Grantham v. Board of County Commissioners for Prince George's County,* 251 Md. 28, 246 A. 2d 548 (1968), made a careful review of the Maryland cases in regard to vacating judg-

ments after enrollment because of alleged fraud, mistake or irregularity. He quoted with approval and followed our decision in *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968) and stated:

"Judge Horney, in the opinion which he filed for this Court in *Berwyn Fuel & Feed Co. v. Kolb,* 249 Md. 475, 240 A. 2d 239 (1968) summarized the burden which the moving party must meet:

" 'As was pointed out in *Tasea Investment Corp. v. Dale,* 222 Md. 474, 160 A. 2d 920 (1960) and in *Murray v. Fishman Construction Co.,* 241 Md. 538, 217 A. 2d 357 (1966), the trial court, besides requiring the party, who moves to set aside an enrolled judgment, to prove that he is acting in good faith and with diligence and that he has a meritorious defense, should also require a showing of such facts and circumstances as will establish the fraud, mistake or irregularity allegedly used to obtain the judgment sought to be vacated.

" '* * * A mere *error,* which in legal parlance generally connotes a departure from truth or accuracy, *State ex rel. Smith v. Smith,* 252 P. 2d 550, 555 (Ore. 1953) and *Gronseth v. Mohn,* 234 N. W. 603, 604 (S. D. 1931), is certainly not an *irregularity* (under Rule 625), which is usually defined as the doing or not doing of that, in the conduct of a suit at law, which, conformable with the practice of the court, ought or ought not to be done. *State v. Lazarus,* 65 S. E. 270, 272 (S. C. 1909) ; *State ex rel Caplow v. Kirkwood,* 117 S.W.2d 652 (Mo. 1938) ; *Babb v. City of Wichita,* 241 P. 2d 755 (Kan. 1952) ; *Black's Law Dictionary* (4th Ed.)."
(251 Md. at 34-35, 246 A. 2d at 551-52.)

Both *Grantham* and *Berwyn Fuel & Feed* were cited

with approval and followed by us in *Household Finance Corp. v. Taylor,* 254 Md. 349, 254 A. 2d 687 (1969).

There is no contention by Mr. Meyer either below or before us that the judgment by confession was obtained by fraud. The signatures on the original note are genuine and the authority to confess judgment is clearly given upon default in payment. No misrepresentation is alleged in the preparation, signing or delivery of the note. There is no contention that the interest and principal of the note, as amended, have been paid. The note, as amended, provides that it shall be construed and enforced in accordance with the laws of Maryland. The confession of judgment was in accordance with the law and practice of this State. The inquiry thus narrows to whether there was any "mistake" or "irregularity" presented by the pleadings, affidavits and proceedings considered by the lower court.

There was, in our opinion, no "mistake" within the meaning of Rule 625 a as we have construed it. Assuming for the argument, without deciding, that the alleged "agreement" between Mr. Hyde and a member of the law firm of which counsel for the plaintiff, Gyro Transport, was a member, would be sufficient to amount to a "mistake" justifying the vacating of the enrolled judgment, it is clear from the record that the alleged "agreement" was to file the "Answer" on or before December 1, 1970, whereas the "Answer" was not filed until December 2, 1970, or one day after the time allegedly agreed upon for the extension. The telegram to the clerk was not a responsive or other pleading and would not come within the purview of the alleged "agreement." There was no compliance with the alleged "agreement" and most certainly this cannot constitute a "mistake" within the meaning of Rule 625 a. See *Household Finance Corp. v. Taylor* and *Grantham v. Board of County Commissioners,* both *supra.*

In our opinion there is no "irregularity" in the confessed judgment proceedings so far as the entry of the judgment for the principal amount of the note, interest

and costs. As we will discuss later, there was an irregularity in the entry of judgment for the *amount* of the attorney's fee; but this only requires a reversal and remand to the lower court to fix the amount of a reasonable attorney's fee. The judgment establishes the right of Gyro Transport to have a reasonable attorney's fee determined and judgment entered for such a reasonable amount.

The signing by Mr. Cutler as "Attorney-in-fact" for the defendants is not an irregularity within the meaning of Rule 625 a. It is uncontradicted that this curious language is used at the insistence of the Clerk, but it did not change the conceded fact that Mr. Cutler is a member of the Maryland Bar authorized to appear in court to confess the judgment. Mr. Meyer was in no way deprived of representation in the matter subsequent to the confession of judgment by counsel chosen by him and, indeed, freely availed himself of his power of choice. The lower court properly, in our opinion, ruled that this designation of counsel as "Attorney-in-fact" did not establish a ground for the vacating of the judgment.

### (2)

As we have observed, there was an error appearing on the face of the note, as amended, for the entry, without a determination and order of the lower court, of the *amount* of a reasonable counsel fee. The note, as amended, did not provide for a *fixed percentage* of the judgment for the counsel fee. Counsel for Gyro Transport at the argument, upon inquiry by the Court, stated that the amount of $101,831.25 as an attorney's fee had been calculated by counsel for the plaintiff by taking 15% of the principal amount due on note, *i.e.*, $678,875.00 and using the resulting figure as the amount of the attorney's fee. This method of calculation appears in the instructions to the Clerk already quoted in full. This was done upon the theory that many provisions to confess judgment in Maryland contain a provision that 15% of the amount due on the note should be the amount of the at-

torney's fee. It may well be true that many provisions to confess judgment do so provide, but the clear fact is that the note, as amended, in the present case *does not so provide*. When the provision to confess judgment provides only for a *reasonable* attorney's fee, the reasonable amount of the fee must be determined *by the court* and counsel may not, himself, use a percentage to determine the amount of the attorney's fee. This was decided by our predecessors in *Johnson v. Phillips,* 143 Md. 16, 122 A. 7 (1923). After quoting with approval from 1 *Black on Judgments* § 75 (2nd ed. 1902), Chief Judge Boyd, for the Court, stated:

> "It is also said in that section that it is customary to specify in the warrant or note the sum which may be incorporated in the judgment as a fee for the attorney, but that cases have sometimes come before the courts, in which the provision, instead of being explicit, merely designated a 'reasonable attorney's fee.' "
> (143 Md. at 26, 27, 122 A. at 11.)

The Court then again quotes with approval from 1 *Black on Judgments, supra,* § 75, as follows:

> "This language, it is held, gives to the court in which the confession is made, the right to determine what is a reasonable fee; it does not leave it to the option or the conscience of the attorney; it contemplates a judicial proceeding by the court for the purpose of ascertaining the amount which may reasonably be charged up. Hence if the attorney himself fixes the sum of his fees, under a power so worded, and confesses judgment for the whole, he acts in excess of his authority, and the judgment so entered, without the intervention of the court, is void.' "
> (143 Md. at 27, 122 A. at 11.)

The Court thereafter indicated that the whole judg-

ment by confession was not void but was voidable in regard to the fee.

See 49 C.J.S. *Judgments* § 154 g, pages 287-88 and § 167, pages 303-04.

The amount of the attorney's fee in the instant case was entered up separately from the judgment for the principal amount and interest on the note, as amended, as this Court indicated was the proper practice in *Webster v. People's Loan, Savings & Deposit Bank,* 160 Md. 57, 62, 152 A. 815, 817 (1931). Upon the remand, the lower court may determine the amount of a reasonable fee and judgment for that amount may be entered as the attorney's fee in the case.

In making the determination on the remand of what elements should be considered in ascertaining what a reasonable attorney's fee should be, the lower court should consider, *inter alia,* whether and to what extent the provision in the amendment to the note to pay "reasonable attorneys' fees" superseded or broadened the provision in the original note, quoted above, that a reasonable attorneys' fee should be based upon actual time required to be spent in reducing the note to judgment at the average hourly rate charged for legal services as recommended by the Bar Association in the jurisdiction where the judgment is granted, particularly in light of the provision that except as specifically modified by the amendment the obligations and provisions of the terms of the original note remain unchanged.

This question in regard to the amount of the attorney's fee was not specifically raised before the lower court or passed upon by it. *Ordinarily,* we do not decide any point or question which does not plainly appear to have been tried and decided by the lower court, Rule 885; but in this case where the judgment is challenged generally and the error appears on the face of the papers, we have decided to determine the matter. We may add that the specific point was not raised in the appellant's brief, but the Court, itself, during the argument

raised the point so that we do not deem it to have been waived. Cf. *Air Lift, Ltd. v. Board of County Commissioners of Worcester County,* 262 Md. 368, 278 A. 2d 244 (1971).

(3)

Mr. Meyer contends that the law of Maryland in regard to the confession of judgment is so arbitrary and restrictive as to take his property without due process of law as prohibited by the Fourteenth Amendment to the Constitution of the United States. We do not perceive any denial of due process inasmuch as Rule 645 c provides a well-recognized method of giving notice of the confession of judgment—which the appellant actually received —and a reasonable time within which to move to vacate the judgment entered by confession presenting any objections there may be to it.

The appellant relies upon the decision of the Supreme Court of the United States in *Schroeder v. City of New York,* 371 U. S. 208, 83 S. Ct. 279, 9 L.Ed.2d 255 (1962). In our opinion this reliance is misplaced and, indeed, the language of the Supreme Court in *Schroeder* appears to us to indicate that the Maryland law and practice in confession of judgment cases does afford due process of law. In *Schroeder* the only "notice" required by the New York law and given the landowner was given by publication in two county newspapers published in small communities many miles from the property (and also in two New York City newspapers) and the posting of notices on trees and poles in the general vicinity of the land condemned (but not on the land, itself).

Mr. Justice Stewart in his opinion for the Supreme Court quoted from the Court's opinion in *Mullane v. Central Hanover Trust Co.,* 339 U. S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865, 873 (1950) — another notice by publication case — as follows:

" 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated,

> under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken v. Meyer*, 311 U. S. 457; *Grannis v. Ordean*, 234 U. S. 385; *Priest v. Las Vegas*, 232 U. S. 604; *Roller v. Holly*, 176 U. S. 398.' "
>
> (371 U. S. at 211, 83 S. Ct. at 282, 9 L.Ed.2d at 258-59.)

Later in the opinion in *Schroeder*, it is stated:

> "The majority opinion in the New York Court of Appeals seems additionally to have drawn support from an assumption that the effect of the city's diversion of the river must have been apparent to the appellant before the expiration of the three-year period within which the statute required that her claim be filed. 10 N. Y. 2d, at 526-527, 180 N. E. 2d, at 569-570. There was no such allegation in the pleadings, upon which the case was decided by the trial court. But even putting this consideration aside, knowledge of a change in the appearance of the river is far short of notice that the city had diverted it and that the appellant had a right to be heard on a claim for compensation for damages resulting from the diversion. That was the information which the city was constitutionally obliged to make at least a good faith effort to give personally to the appellant — an obligation which the mailing of a single letter would have discharged."
>
> (371 U. S. at 213-14, 83 S. Ct. at 283, 9 L.Ed.2d at 260.)

It seems clear from this opinion of the Supreme Court that the sending of a *registered* letter to a party at his last known address affords procedural due process of law under the Fourteenth Amendment. This method is

obviously "reasonably calculated" to give notice, and as we have observed, caused the summons in the present case to reach the defendant, Meyer, and afford him *actual notice* of the judgment by confession and afford him sufficient time — 30 days — to present his defenses or objections to its entry. The failure to present these defenses or objections within the reasonable time limit established by Rule 645 c was the fault of Mr. Meyer and not of the provisions of the Maryland law. See *Groom v. Margulies*, 257 Md. 691, 704, 265 A. 2d 249, 255 (1970).

> *Judgment affirmed as to $747,-612.19 with interest from October 8, 1970, and $24.00 court costs, but reversed as to amount only in regard to $101,831.25 as an attorney's fee and case remanded for a determination by the Circuit Court for M o n t g o m e r y C o u n t y of a reasonable amount for an attorney's fee and for entry of judgment in regular course for the amount so determined; the appellant to pay seven-eighths of the costs in this Court and the appellee to pay the remaining one-eighth of those costs.*