## MORTGAGE INVESTORS OF WASHINGTON *v.* CITIZENS BANK AND TRUST COMPANY OF MARYLAND

[No. 16, September Term, 1976.]

*Decided November 24, 1976.*

*Motion for reconsideration filed December 23, 1976; denied January 3, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, LEVINE and ELDRIDGE, JJ.

*David E. Betts,* with whom were *Betts, Clogg & Murdock, Allan A. Noble, Clancy & Pfeifer, Andrew S. Krulwich, Robert H. Winter, Patrick F. J. Macrory* and *Arnold & Porter* on the brief, for appellant.

*Ronald A. Baradel,* with whom were *C. E. Hartman, L* and *Hartman & Crain* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court. LEVINE, J., dissents and filed a dissenting opinion at page 511 *infra.*

This case presents the question whether a court should consider the reasonableness of an attorney's collection fee when it is derived from an application of a percentage stipulated in a note to the amount of the recovery. The Circuit Court for Montgomery County concluded that it should not. The Court of Special Appeals affirmed in *Mortgage Investors of Washington v. Citizens Bank & Trust Co. of Maryland,* 29 Md. App. 591, 349 A. 2d 647 (1976). We granted certiorari in order that we might consider the matter.

Mortgage Investors of Washington (Mortgage Investors) is a multimillion dollar real estate investment trust which makes loans nationally to the real estate industry. At the inception of this matter, it had negotiated lines of credit with 22 banks, including Citizens Bank and Trust Company of Maryland (Citizens).

Under the arrangement with Citizens, which was apparently similar to those with the other banks, Mortgage Investors could borrow up to $1,000,000.00 at the prime rate. Mortgage Investors agreed to maintain a minimum compensating balance of $100,000.00 plus 10% of the amount of borrowing actually in use at any one time and to "rest" the line of credit for 30 consecutive days each year: in other words, to have no loans from Citizens outstanding during this period.

On 17 July 1974, Mortgage Investors borrowed $750,000.00 from Citizens. The borrowing was evidenced by a printed note of that date, on a form prepared by Citizens, but supplied at the request of Mortgage Investors, due 15 October 1974. On 21 August, an additional borrowing of $250,000.00 was made, similarly evidenced by a note due 15 October. Both notes contained an explicit provision as to the payment of attorney's fees by the borrower upon default: "If, upon our default, suit is instituted, we agree to pay all court costs and an attorney's fee of 15% of the outstanding balance at the time of the suit."

Although Citizens notified Mortgage Investors that it would expect payment of the notes when due and that the

loan agreement would not be renewed, Mortgage Investors paid only the interest on but not the principal of the notes, apparently because of the possibility that the refusal of Citizens to renew the notes would have precipitated the call of loans outstanding under Mortgage Investors' agreements with certain other banks.

When the principal amount of the notes was not paid when due, Citizens filed suit on 13 November 1974 on the notes. A day later, Citizens credited Mortgage Investors with the compensating balance of $200,000.00, thus reducing the unpaid principal balance of the loan evidenced by the notes to $800,000.00.

On 25 October 1974, after Mortgage Investors' default, but prior to the institution of suit, Citizens' attorneys, by letter had set their fees in collection cases to be handled for Citizens on a contingency basis. The letter read:

"After a careful review of our collection cases, we suggest the following contingent fee schedule which we believe will be reasonably fair to the Bank and to us, particularly in light of the removal of confession of judgment provisions from Bank forms.

"For any collection case, the gross amount of which is $750.00 or less, we will charge the same rate as a collection agency — 50%

"For any case involving more than $750.00:

(a) for the first $1,500.00 collected — one-third

(b) for the next $3,500.00 collected — from 25% to 33 1/3%

(c) for the next $5,000.00 collected — 15% to 33 1/3%

(d) for all sums collected thereafter — 10% to 25%.

"If a lump sum collection is made prior to filing suit, the fee to be charged to the Bank will be one-half of the above minimum (excepting cases of $750.00 or less).

"If the collections are made after suit is instituted, but before trial, the minimum above fees. If after trial, but before judgment, a reasonable figure between the minimum and maximum fees.

"If collections are made either by installment whether before or after suit, or if collection is made after judgment, the maximum above fees."

On motion for summary judgment, judgment was entered against Mortgage Investors in favor of Citizens for $815,714.30, which included the unpaid balance of principal plus interest. Another judgment was entered in Citizens' favor for $150,640.26 for attorneys' fees. The Court of Special Appeals, while recognizing that $150,640.26 was 15% of $1,004,268.40, the amount due at the time suit was instituted, concluded at the suggestion of Citizens' attorneys that the amount which Citizens was obligated to pay its attorneys under its agreement with them was $105,750.58, and reduced the judgment to this amount.

Mortgage Investors mounts a multifaceted attack on this judgment, the crux of which is that a court should not be insulated from determining the reasonableness of an attorney's collection fee by the fact that the amount of the fee or the percentage by which the fee is to be determined is stipulated in the note or other instrument which is the subject of the suit. They argue that they can find no other common law jurisdiction in which a trial court is precluded from considering the reasonableness of a collection fee stated as a percentage or amount in the instrument on which suit is brought.

We are squarely faced with the problem of reconciling four well grounded doctrines: first, the inherent power of a court to oversee the activities of members of its bar, *American Nat'l Bank v. Mackey*, 247 Md. 319, 323-25, 231 A. 2d 15, 18-20 (1967) (collection fee is not applicable to both mortgage and mortgage note); *Weiner v. Swales*, 217 Md. 123, 126-27, 141 A. 2d 749, 751 (1958) (attorney's collection fee not payable when attorney is the holder of the note and

performs collection work himself); *Rheb v. Bar Ass'n of Baltimore*, 186 Md. 200, 205, 46 A. 2d 289, 291 (1946) ("In the last analysis the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner."); second, the rights of parties to make such contracts as they please, so long as they are consistent with law, *Webster v. People's Loan, Savings & Deposit Bank*, 160 Md. 57, 61, 152 A. 815, 817 (1931); *Gaither v. Tolson*, 84 Md. 637, 639, 36 A. 449 (1897); *Bowie v. Hall*, 69 Md. 433, 435, 16 A. 64 (1888); *Maryland Fertilizing & Mfg. Co. v. Newman*, 60 Md. 584, 588 (1883) ("Parties have the right to make their contracts in what form they please, provided they consist with the law of the land; and it is the duty of the courts so to construe them, if possible, as to maintain them in their integrity and entirety."); third, the duty of the courts to protect other creditors, *Johnson v. Phillips*, 143 Md. 16, 26, 122 A. 7, 11 (1923) ("[A provision for a collection fee] rests upon a valid consideration, and is not fraudulent as to other creditors; unless the amount designated as attorney's fees is grossly in excess of any reasonable amount, in which case the judgment, at least to the extent of such fees, is fraudulent and void as against the other creditors of the defendant."); and fourth, the recognition of the fact that an agreement to pay an attorney's fees is a contract of indemnification, *Weiner v. Swales, supra*, 217 Md. at 126; *Legum v. Farmers Nat'l Bank*, 180 Md. 356, 360, 24 A. 2d 281, 283 (1942); *Webster v. People's Loan, Savings & Deposit Bank, supra*, 160 Md. at 62-63, limiting the amount for which the debtor is responsible to the expense actually incurred by the creditor.

Testing the facts of this case against this mosaic, we conclude that the collection fee stipulated in the note is collectible if a valid judgment is entered, *Qualified Builders, Inc. v. Equitable Trust Co.*, 273 Md. 579, 584, 331 A. 2d 293, 296 (1975); *Brenner v. Plitt*, 182 Md. 348, 366-67, 34 A. 2d 853, 861-62 (1943), and is not subject to reversal on judicial review in the factual situation before us unless a term such

as "reasonable fee" is substituted for a fixed sum or a percentage of the amount recovered, or unless the rights of other creditors of the debtor not parties to the fee arrangement are involved, *Johnson v. Phillips, supra,* 143 Md. at 26-27. Neither was the case here. Further, since the agreement is one of indemnity, Citizens cannot collect from Mortgage Investors an amount greater than the $105,750.58 which it was required to pay under its agreement with its attorneys.

While the amount of the collection fee may be regarded as grossly disproportionate to the amount of work involved, it must be remembered that Mortgage Investors was an informed and sophisticated borrower, entirely familiar with banking practices. *Compare Goldman v. Connecticut General Life Ins. Co.,* 251 Md. 575, 579-80, 248 A. 2d 154, 157-58 (1968), where we held that there could be no recovery of a fee of $17,000.00 charged for a loan commitment which was never exercised. This was an arm's length transaction, and Mortgage Investors was completely free to enter into any arrangement which might be exacted to obtain the line of credit. In this connection it is significant that the interest rate paid on the notes, 12%, became an effective rate of 15% because of the compensating balance once the full line of credit was utilized.

We do not intend to intimate that we would be reluctant to disturb a fee arrangement between parties of dissimilar knowledge or background where there was clear evidence of overreaching. Similarly, a fee might be denied in a case where the contemplated services were not rendered or where the amount stipulated was not paid to the creditor's counsel, *compare Webster v. People's Loan, Savings & Deposit Bank, supra,* 160 Md. at 63 *with American Nat'l Bank v. Mackey, supra,* 247 Md. at 323, and *see Chestertown Bank v. Walker,* 163 F. 510 (4th Cir. 1908).

Under the facts of this case, however, judgment was properly entered.

*Judgment affirmed, costs to be*
*paid by appellant.*

*Levine, J., dissenting:*

The majority concludes today that even if an attorney's fee of over $105,000 is unreasonable in this note collection case, the Court will not exercise its power to lower that fee to a reasonable level absent a clear showing of overreaching. Since I believe the Court does possess such power and should exercise it here, I dissent.

The Court tacitly concludes that a contract provision providing for an attorney's fee should be treated in the same manner as any other provision in a contract; for example, an attorney's fee provision is void only if there is clear evidence of overreaching. I believe, however, that provisions for attorneys' fees fall in a separate category because of our supervisory role over attorneys, who are, after all, officers of the Court. The majority, of course, recognizes that because attorneys are officers of the Court, the Court possesses the power to uphold the highest standards of professional conduct and to protect the public from imposition by the practitioner. This power should be exercised when necessary to merit "the respect and confidence of . . . the society which [an attorney] serves." American Bar Association, Code of Professional Responsibility, Preamble (1975). Achievement of this objective compels, in circumstances such as are present here, special treatment for contracts for attorneys' fees.

The Code of Professional Responsibility provides the touchstone against which we should measure an attorney's conduct:

> "(A) A lawyer shall not enter into an agreement for, charge, or *collect* an illegal or *clearly excessive* fee.
>
> "(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is *in excess of a reasonable fee. . . .*" Code of Professional Responsibility, Disciplinary Rule 2-106 (A), (B), Maryland Rules App. F (emphasis added).

These rules are mandatory in character and state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. American Bar Association, Code of Professional Responsibility, Preliminary Statement (1975). The majority apparently would permit attorneys to collect excessive fees, while not permitting them to enter into unconscionable agreements for excessive fees. I doubt that the public will draw such fine distinctions in assessing its confidence in attorneys.

The Court in the past has interposed its disapproval of an attorney's fee exceeding $100,000. In *Meyer v. Gyro Transp. Systems*, 263 Md. 518, 530-33, 283 A. 2d 608 (1971), Meyer appealed entry of a confessed judgment against him on a note, but did not contend that entry of costs of $101,831.25 as attorney's fee was error. The note provided for payment of reasonable attorney's fees, but the issue of whether the amount which the creditor asked the court clerk to enter was reasonable arose only at oral argument. This Court affirmed the judgment but, remanded for a determination of reasonable attorney's fees. Since the Court does not ordinarily decide any point not plainly appearing to have been tried and decided below, Rule 885, the extraordinary action taken there reflects our attitude toward awarding excessive attorney's fees.

On an earlier occasion this Court disbarred an attorney for using slugs in parking meters on the grounds that such conduct is "prejudicial to the administration of justice." Maryland Code (1957, 1976 Repl. Vol.) Art. 10, § 16. *Fellner v. Bar Ass'n*, 213 Md. 243, 247, 131 A. 2d 729 (1957). I question whether exacting a fee which, as the majority states, is as "grossly disproportionate to the amount of work involved" as this one is not as likely to destroy public confidence. Our duty to foster public confidence in the administration of justice therefore warrants our intervention here, to the extent that we should remand the case for determination of a reasonable fee.

I see yet another defect in the majority's approach. The Court concludes that an indemnity contract requires the debtor to pay all expenses that the creditor actually incurs,

rather than those that he reasonably incurs. The majority reaches this conclusion in reliance on *Weiner v. Swales*, 217 Md. 123, 126, 141 A. 2d 749 (1958), *Legum v. Farmers Nat. Bank*, 180 Md. 356, 360-61, 24 A. 2d 281 (1942), and *Webster v. People's Loan Etc. Bank*, 160 Md. 57, 62-63, 152 A. 815 (1931). None of those cases, however, decided that issue. *Weiner* simply held that an attorney who collects his own note may not collect *any* attorney's fee. *Legum* resolved an evidence question and now stands for the proposition that a judgment for attorney's fees may be entered without production of any evidence that the creditor has already paid the attorney. Finally, *Webster* held that a creditor in possession of both mortgages and a confessed judgment note may pursue the remedy on the note without first exhausting the remedy on the mortgages. The Court then held that attorney's fees should be taxed as costs rather than be included in the judgment. Although these cases correctly viewed stipulations for attorneys' fees as contracts of indemnity, none stands for the proposition for which they are cited by the majority.

A requirement of reasonableness for attorney's fees, moreover, has been widely, if not uniformly, adopted in cases where notes or contracts provided for fixed or percentage fees.[1] Since, it must be remembered, the legal profession "is a branch of the administration of justice and not a mere money-getting trade," American Bar Association,

[1]. *See, e.g.*, Waterman v. Sullivan, 156 Colo. 195, 397 P. 2d 739, 741 (1964); American Service and Supply Company v. Raby, 348 Mass. 720, 206 N.E.2d 94, 96 (1965); Campbell v. Worman, 58 Minn. 561, 60 N. W. 668, 669 (1894); Bergen Builders, Inc. v. Horizon Developers, Inc., 44 N. J. 435, 210 A. 2d 65, 66 (1965); Equitable Lbr. Co. v. IPA Land Devel. Corp., 38 N.Y.2d 516, 344 N.E.2d 391, 381 N.Y.S.2d 459, 463-64 (1976); Coley v. Coley, 94 S. C. 383, 77 S. E. 49, 50 (1913); Dole v. Wade, 510 S.W.2d 909, 911-12 (Tenn. 1974); Kuper v. Schmidt, 161 Tex. 189, 338 S.W.2d 948, 950 (1960); Grand Piano Co. v. Lewis, 179 Va. 281, 19 S.E.2d 86, 88-89 (1942); Home Bank v. Becker, 48 Wis. 2d 1, 179 N.W.2d 855, 863 (1970). *See also* 5 Williston, Law of Contracts § 786 at p. 747 (3d ed. Jaeger 1961); 2 Speiser, Attorneys' Fees § 15.44 (1973); Annots. 18 A.L.R.3d 733, 742-43 (1968), 17 A.L.R.2d 288, 307-11 (1951), and 1915B L.R.A. 928, 938-42. *See generally* Restatement, Restitution, § 80, § 80 Comment a (1937).

As the majority readily concedes, an attorney may recover only reasonable fees despite a percentage stipulation where the debtor is bankrupt. Chestertown Bank of Maryland v. Walker, 163 F. 510, 512 (4th Cir. 1908); Johnson v. Phillips, 143 Md. 16, 26, 122 A. 7 (1923).

Canons of Professional Ethics, Cannon 12 (1908), I would hold that a note which stipulates that a fixed percentage shall be recovered from the debtor as attorney's fees may be enforced only to the extent of the reasonable fees necessarily incurred by the creditor to collect his debt.