National Builders Bank of Chicago, Appellee, v. Robert
L. Simons, Appellant.

Gen. No. 40,759.

Opinion filed December 30, 1940.

LANDIS & LANDIS, of Chicago, for appellant; ALVIN
LANDIS, of counsel.

RINGER, REINWALD & SOSTRIN, of Chicago, for appellee; M. LESTER REINWALD and MORRIS SOSTRIN, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

In 1929, Robert L. Simons, as president of Stone-Field Corporation, obtained loans from National Builders Bank of Chicago, some of which were evidenced by the promissory notes here involved, signed by Simons as president, and bearing his special personal indorsement on the backs thereof. These notes contained the usual warrant of attorney authorizing the entry of judgments of confession, and on the reverse side of each note there appeared the following: "For value received, the undersigned and each of the undersigned in addition to the obligations imposed by endorsement and waiving all notices of every character and nature, hereby become a party to, adopt, agree to, accept, guarantee and assume all the terms, conditions and waivers contained in the note on the reverse side hereof, guarantee the payment of said note at maturity, and consent without notice of any kind to any and all extensions of time made by the holder of said note. Nothing except cash payment to the holder of said note shall release the undersigned or any of the undersigned. Robert L. Simons." On November 23, 1938, the National Builders Bank confessed judgment on three of these notes against Simons in the aggregate amount of some $13,000, and caused a garnishment writ to be issued against the University State Bank as garnishee, which at the time of service of the writ, November 25, 1938, held $1514.19 to the credit of Simons, the judgment debtor.

Thereafter, December 8, 1938, 12 days after the garnishment writ had been served, Simons presented a motion to vacate the judgment by confession theretofore entered, on the ground that the power of at-

torney executed by him as maker of the notes did not authorize a confession of judgment against him as guarantor. The motion was supported by a verified petition, but no attempt was made to set up any meritorious defense to the claim. Nevertheless, the trial court vacated the judgment on December 8, 1938, instead of entering the usual order merely allowing the judgment to be opened up and to stand as security for the indebtedness abiding further hearing.

On the day that this order was entered Simons appeared at the University State Bank and attempted to obtain from it the funds on deposit in his account. The bank had not been discharged, however, and so refused to release the funds on deposit until it received from Simons as security, two United States treasury bonds in the amount of $2,000. These bonds were deposited with the bank under an agreement by which it was to hold them as security for having released to Simons the money on deposit without being discharged as garnishee before the order of December 8, 1938, had become final.

Afterward, on December 13, 1938, the National Builders Bank, pursuant to the Civil Practice Act (ch. 110, sec. 57, par. 181, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.057]; rule 15 of the Supreme Court of Illinois and rule 21 of the circuit court of Cook county), filed a motion, supported by its affidavit of claim for summary judgment. Copies of this motion and affidavit of claim were served upon Simon's attorneys, as required by the rules. The procedure indicated under rule 21 of the circuit court provides that within five days after service of notice upon him for summary judgment the defendant shall serve upon the plaintiff copies of the affidavits of merits and all other papers intended to be used in opposition to the motion. Simons defaulted, however, and filed no affidavit of merits whatsoever to plaintiff's motion and verified petition. When the motion for summary judgment

came up for hearing, on December 23, 1938, and it appearing that defendant had filed no affidavits of merits in accordance with the foregoing rule, the court again entered judgment for National Builders Bank of Chicago, and thereupon a second garnishment writ was served upon the University State Bank, as garnishee, based on the summary judgment.

In the meantime, before summary judgment had been entered, Simons appeared in court by his counsel December 12, 1938, and presented motions to discharge the University State Bank, as garnishee, in order to obtain the treasury bonds which he had deposited there. Plaintiff's counsel called the court's attention to the fact that there was no defense to the indebtedness, and that it was based on fraud at its inception. The court indicated that he did not then care to rule on the motion to discharge the garnishee, and suggested to plaintiff's counsel that if they would make a motion for summary judgment, the court would hold his ruling on the motion to discharge the garnishee in abeyance until such motion was made. In response to the court's suggestion, the motion for summary judgment was filed and judgment was afterward entered.

January 5, 1939, which was within 30 days following the entry of the order of December 8, 1938, vacating the judgment in favor of plaintiff, the trial court set aside its order of December 8, 1938, and reinstated the original judgment by confession of National Builders Bank. In so doing the judge indicated that this judgment was mistakenly vacated and that the order should merely have provided for opening the judgment and allowing it to stand as security for the indebtedness. At the same time the court continued the motion for judgment against the garnishee, and ordered briefs filed by the respective counsel.

February 16, 1939, the court finally disposed of plaintiff's motion for judgment against the garnishee,

and defendant's motion in opposition thereto, by entering judgment against University State Bank, as garnishee, upon its answer, and reciting in the order the following: ''And the Court being fully advised in the premises and after having considered the arguments of counsel supported by their respective briefs and finding that the order entered by this Court on December 8, 1938, vacating plaintiff's original judgment *was, in effect, and intended by this Court to be an order to open up said plaintiff's original judgment . . . the said original judgment to stand as security,* and further finding that defendant, Robert L. Simons, had no defense whatsoever to plaintiff's claim,'' and the court at the same time reaffirmed the original judgment of plaintiff and entered judgment against the University State Bank, as garnishee.

Simons appeals from three orders entered in this proceeding: (1) the order entering a summary judgment against defendant; (2) the order modifying the original judgment by confession, entered on November 23, 1938, reinstating said judgment; and (3) the order reinstating the original judgment by confession against defendant on November 23, 1938. The University State Bank also prosecuted an appeal, in Gen. No. 40,760, from the garnishment order entered against it, and while these two cases were pending on appeal an order was here entered consolidating them.

It is urged as the principal ground for reversal that the judgment upon which the garnishment order was founded was void, because the power of attorney executed by the maker of the notes did not authorize a confession of judgment against Simons under his contract of guarantee on the reverse side of the notes. If this were a confession of judgment against a simple indorser or guarantor, there would be some validity to defendant's position, but Simons was president of the Stone-Field Corporation, and as such he signed the face of the note, which contained a warrant of attorney

expressly authorizing the entry of a judgment against the "makers, endorsers and guarantors," as hereinbefore set forth. Defendant cites several Illinois decisions in support of his contention that a power to confess judgment must be clearly given and strictly pursued, and that a judgment by confession cannot ordinarily be entered against a simple indorser or guarantor. However, we think these cases are not applicable to the circumstances of this proceeding, because they merely hold that a warrant to confess cannot be exercised generally and that the liability of the maker of the note and the guarantor are separate and distinct. This is true, of course, where, by the language of their respective agreements, the makers and the guarantors have assumed separate and distinct obligations, but not in instances where the maker by apt language renders himself liable, not only as maker, but also as guarantor and indorser.

The trial court evidently relied on two Maryland decisions where the facts were strikingly similar to the case at bar. In the first of these, *Rhoads v. National Bank of Cockeysville,* decided by the court of appeals of Maryland, in 1937, 172 Md. 123, 190 Atl. 750, the judgment by confession was entered in favor of the National Bank, not only against Rhoads, the maker, but also against his mother, Elmira E. Rhoads, indorser, on a note containing a power of attorney to confess judgment in the usual form. Mrs. Rhoads thereupon filed a motion to vacate the judgment on the ground that the warrant of attorney did not authorize the entry of a judgment against her, as indorser. The indorsement upon which the validity of the judgment by confession rested, was as follows: "In consideration of $1.00 paid to the undersigned and of the making at the request of the undersigned of the loan evidenced by the within note, the undersigned hereby jointly and severally guarantee to National Bank of Cockeysville, its successors, endorsees, or assigns, the

punctual payment at maturity of the said loan and hereby assent to all the terms and conditions of the said note, and consent that the securities for the said loan may be exchanged or surrendered from time to time, or the time of payment of the said loan extended, without notice to or further assent from the undersigned, who will remain bound upon this guarantee, notwithstanding such changes, surrender or extension; and the undersigned further agrees that it or they or any of them, shall be regarded as principals of the within note, as between the undersigned, or any of them, and any holder of this note.'' In holding that the judgment was valid against the indorser, the court said (p. 751): ''The provision in the note for a confession of judgment was expressly applicable to both the maker and the indorser. In *Johnson v. Phillips,* 143 Md. 16, 122 Atl. 7, 10, the form of indorsement stipulated that all the provisions of the note should apply to and bind indorsers as though they were makers. The note included a power of attorney for a confession of judgment. The indorser was held to be amenable to such a judgment jointly with the maker of the note. The court declined in that case to discuss the question whether the party signing the indorsement was a guarantor or simply an indorser, because 'the form of the indorsement made him liable to be sued as a maker,' '' and in commenting on the probable intention of the indorser to be bound as a principal, the court further said (p. 751): ''The intention of the appellant to be bound as a principal on the note is definitely stated in the indorsement now under consideration. . . . Having thus assumed the position of a party primarily liable, the appellant is not entitled to demand the unqualified rights of an endorser.''

The circumstances of the case at bar are stronger than in the *Rhoads* case, for Mrs. Rhoads was merely an accommodation indorser for her son, whereas in this proceeding Simons indorsed the note for the bene-

fit of his corporation. In the *Rhoads* case Mrs. Rhoads did not execute the note on its face, and it might be said that she was unaware of the fact that the note contained a confession clause. In the case at bar, however, Simons, who signed the special indorsement, also signed the note as president, and was fully aware of the provisions and import of the document which he executed. There is also the circumstance that in the *Rhoads* case the confession clause did not contain any reference to any subsequent indorsers or guarantors, while in this proceeding the confession clause specifically provides that the warrant of attorney may be exercised against the makers, indorsers and guarantors. We can conceive of no stronger language to bind Simons under his guarantee than that contained in his special contract of indorsement, whereby he not only became "a party to," but also adopted, agreed to accept, guaranteed and assumed all the terms, conditions and waivers, "contained in the note on the reverse side hereof." The principal distinction usually made between the maker and indorser is that the indorser is entitled to notice of presentment and dishonor, and if such notice is given or waived his liability becomes as absolute as that of the maker. Under the contract of indorsement in the case at bar, Simons expressly agreed to be bound by all the terms of the note and expressly waived notice of presentment, and by so doing he rendered himself liable.

In the second case, *Johnson v. Phillips,* 143 Md. 16, 122 Atl. 7, which is quoted in the opinion of the court in *Rhoads v. National Bank of Cockeysville, supra,* a judgment by confession was entered against Leon Venable and William S. Phillips. Venable had signed the face of the note as maker. The note contained the usual confession clause. It was indorsed by Phillips in the following manner: "For value received, we, the endorsers named below, waive presentment, protest, demand of payment and notice of nonpayment,

and guarantee the payment of the within note, and agree that all of its provisions shall apply to and bind us as though we were makers.'' After judgment was entered Phillips, as indorser, made a motion to vacate the judgment, which was sustained by the court. In reversing this order the court of appeals applied the same rule of law as was invoked in the *Rhoads* case, and held the judgment by confession valid as against Phillips, who, like Mrs. Rhoads, was also an accommodation indorser.

Defendant's counsel argue that an examination of the guarantee indicates that it refers to the note, but not to the warrant of attorney, and that under the well-settled rules of construction, a guarantee being a collateral and independent undertaking, courts will not extend the effect of the guarantee beyond its terms, and they raise the query, Can the guarantee be extended to the warrant of attorney by implication? As we view the matter, the question involved is not whether the warrant of attorney has been exceeded, or whether it is necessary to construe the warrant so as to hold that it may be extended to apply to the warrant of attorney by implication, but rather whether Simons adopted all the provisions and terms on the face of the note, including the warrant of attorney. The terms of the indorsement are so strong as to remove any doubt on this question. Simons, by his indorsement, expressly assumed all the terms and conditions contained on the face of the note, and made himself a party thereto, and by waiving all notices required by law, he became for all purposes the same as the maker of the note. We think the trial court invoked the only rule of law that could fairly be applied to the circumstances of this case, in holding that the original judgment was valid and that it properly reinstated the same by its order of January 5, 1939.

It clearly appears from the oral opinion of the trial judge that he conceived it to have been a mistake

in vacating the judgment by confession, and when the matter was later, and within 30 days, called to his attention, he still had jurisdiction to rectify his mistake and he was justified in setting that order aside and reinstating the judgment. At that stage of the proceeding there were two judgments against Simons. This is permissible under section 50 of the Civil Practice Act (ch. 110, par. 174, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 104.050]), which provides that "the court shall control the proceedings so that the plaintiff shall receive but one satisfaction." There was no irregularity in any of the subsequent orders entered.

The remaining point urged by Simons is that no leave was granted plaintiff to proceed under the complaint it filed after the court had vacated the judgment and that the proceedings terminated with the order entered December 8, 1938. It is argued that after the judgment by confession was vacated, Simons was not before the court, and that in order for plaintiff to proceed further it was necessary to have summons issued and served upon defendant in the same manner as any other action at law. This contention is untenable for several reasons. At the time of the entry of the original judgment Simons's appearance was entered pursuant to the warrant of authority. Moreover, on December 8, 1938, his counsel, pursuant to notice served in open court, made a motion on behalf of their client to vacate the judgment and this matter was argued at length. Simons thereby submitted himself to the jurisdiction of the court, his appearance not having been limited specifically in any respect, and an order was afterward entered on the motion which his counsel made. Later, December 11, 1938, his attorneys served another notice of a motion, and the following day argued at length to have the garnishee discharged. The question of jurisdiction over Simons's person was not raised in either of these in-

stances, and finally, December 22, 1938, the day before plaintiff's motion of summary judgment was heard, Simons's attorney filed a third motion in writing to strike the motion for summary judgment, which was argued December 23, and pursuant to a full hearing thereon the court entered an order overruling the motion.

We find no reason for reversal of any of the orders appealed from, and they are accordingly affirmed.

*Orders affirmed.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.