## MORTGAGE INVESTORS OF WASHINGTON v. CITIZENS BANK AND TRUST COMPANY OF MARYLAND

[No. 350, September Term, 1975.]

*Decided January 2, 1976.*

---

592

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Patrick F. J. Macrory*, with whom were *Arnold & Porter, Joseph Patrick Clancy, Susan E. Pfeifer, Allan A. Noble* and *Clancy & Pfeifer* on the brief, for appellant.

*Ronald A. Baradel*, with whom were *Hartman & Crain* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

The issue for decision in this case is whether a stipulation in a promissory note for the payment by the debtor of a specified attorney's fee for services in the collection of the debt upon default is valid and enforceable. We hold that such a provision is valid and that it is enforceable with the limitation that the fee may not exceed the amount which the creditor is obligated to pay his attorney for the services contemplated.

## STATEMENT OF THE CASE

Mortgage Investors of Washington (MIW) executed two notes, promising to pay Citizens Bank and Trust Company of Maryland (Citizens) at a certain time "the total of payments stated hereon with interest until paid." The notes contained this provision: "If, upon our default, suit is instituted, we agree to pay all court costs and an attorney's fee of 15% of the outstanding balance at the time of suit." [1] The notes became overdue, and Citizens, its request for payment going unheeded, instituted suit through its counsel in the Circuit Court for Montgomery County on 13 November 1974, claiming the outstanding principal balance, interest, costs, and attorney's fees. A motion raising preliminary objection, a motion *ne recipiatur* and a motion to postpone depositions, all filed by MIW, were denied. On 11 April 1975, upon hearing, motions for summary judgment were granted. One judgment was entered for the outstanding balance of the debt with interest and costs and another judgment was entered for attorney's fees with interest and costs. Thereafter, MIW paid the balance due on the principal debt, and on 11 April and 22 April Citizens entered credits totaling the full amount of the award on that debt. On 16 April MIW filed motions for a new trial, for reconsideration and rehearing on the motion for summary judgment, and to set aside the award of attorney's fees. On 6 May the motions were heard and taken under advisement, but on 9 May, before they were determined, MIW noted an appeal. The appeal was taken both from the judgment on the principal debt and the judgment on the attorney's fees. Because the full amount of the judgment awarded on the principal debt has been paid and credits duly entered by Citizens, the appeal as to that judgment is moot. The appeal from the judgment with respect to the attorney's fees is all that remains for review and, in fact, is all that was briefed and argued before us.

---

1. MIW waived "all notice, demand and protest and the benefit of all exemption laws and all irregularity of errors in entering judgment or the execution thereon. . . ." It further consented "to the immediate execution of said judgment."

Citizens made known that under an agreement between it and its attorney, entered into independently of the instant case, a contingent fee schedule for collection services had been established as "reasonably fair" to the bank and the attorney, "particularly in light of the removal of confession of judgment provisions from Bank forms." Under this schedule, Citizens was obliged to pay the attorney for his services in collecting the balance due on the notes, an amount which was less than the judgment for those services awarded on the basis of the stipulation in the note. Citizens asserts that it "has *only* sought *indemnification* for the amounts which it has legitimately become obligated to pay by reason of that default [of the notes], and 'nothing more'."

## THE LAW

"Parties have the right to make their contracts in what form they please, provided they consist with the law of the land; and it is the duty of the courts so to construe them, if possible, as to maintain them in their integrity and entirety."

This language from *Maryland Fertilizing and Manufacturing Company v. Newman*, 60 Md. 584, 588 (1883) enunciated a precept now firmly established in Maryland. *Webster v. People's Loan, Savings & Deposit Bank*, 160 Md. 57, 61 (1931); *Gaither v. Tolson*, 84 Md. 637, 639 (1897); *Bowie v. Hall*, 69 Md. 433, 435 (1888). It is the foundation for the consistent upholding by the Court of Appeals of Maryland of the validity of a provision in a promissory note requiring the debtor upon default to pay an attorney's fee for services performed to collect the debt. The Court said in *Webster*, at 61: "That the parties to a contract have the right to agree for the payment of an attorney's fee in the event of default in payment by the promisor has long been recognized in the decisions of this court." As recently as *Qualified Builders, Inc. v. Equitable Trust Co.*, 273 Md. 579, 584 (1975), the Court, quoting *Brenner v. Plitt*, 182 Md. 348, 366 (1943) recognized that "there is no question that a stipulation in a promissory note, in case of its non-payment at maturity, to

pay the costs of collecting the same, including attorney's fees, is valid and can be enforced," adding "even though, in the absence of either statutory or contractual authority, expenditures for attorney's fees ordinarily are not recoverable as damages by the successful litigant against his unsuccessful adversary." The Court observed in *Webster*, at 61: "In a few of the courts of the country such provisions have been characterized as a cover to usury and declared void as against public policy. . . . In the great majority of the states such provisions have been upheld, in some as a penalty for failure to pay promptly as agreed, but in most cases as a contract of indemnity to reimburse the plaintiff for the expense of enforcing his contract incurred by the defendant's default. . . ." (citations omitted).[2]

In Maryland it is settled that such provision is a contract of indemnity. *Webster*, at 62-63; *Legum*, at 360; *Weiner*, at 126. It cannot be "regarded as a cover to usury, for its effect is clearly not to put any money above the legal rate of interest into the pocket of the lender, but merely to enable him to get back his money with legal interest and nothing more." *Bowie*, at 435-436; *Gaither*, at 639; *Webster*, at 61; *Weiner*, at 126. Consistent with the view that the fee provision is a contract of indemnity: "If the plaintiff pays less for the services of his attorney than the amount stipulated, or allowed by the court where the amount is not

---

**2.** The Court had come to the same conclusion in Bowie v. Hall, *supra*. It noted, at 436: "We are not aware of any case in which such a contract has come before an English court, and this may result from what we believe to be the fact that the practice of remunerating attorneys and solicitors for their professional services, by a certain percentage on money collected by them for their clients by suits in court, has never prevailed in England. In this country, however, such a practice has been commonly adopted. Contracts, therefore, like the present are not unusual here, and have become numerous in recent times. In some cases their validity has been denied by the courts, but it seems they are sustained by a decided preponderance of authority."

*Webster* is the case most often cited by the Court of Appeals on the subject. For example, Legum v. Farmers Nat. Bank, 180 Md. 356, 360 (1942); Brenner v. Plitt, *supra*, at 366; Weiner v. Swales, 217 Md. 123, 126 (1958); American Nat. Bank v. Mackey, 247 Md. 319, 323 (1967); Qualified Builders, Inc. v. Equitable Trust Company, *supra*, at 581, n. 2, and 583. See Addressograph-Multigraph v. Zink, 273 Md. 277, 289 (1974); Taylor v. Wahby, 271 Md. 101, 115 (1974); Empire Realty Co. v. Fleisher, 269 Md. 278, 286 (1973).

specified in the instrument . . ., then it is his duty to remit or credit the difference; if he pays more than the fees entered, then he is out the excess." *Webster*, at 63. See *Weiner*, at 126-127; *Qualified Builders*, at 581, n. 2.

The fee "is not a gratuity to which the attorney is entitled upon the entry of his appearance for the plaintiff, but is payable for services rendered as the judgment is collected." *Webster*, at 63; *Brenner*, at 366-367; *American Nat. Bank*, at 325; *Qualified Builders*, at 581, n. 2. The amount of the fee is payable to the extent stipulated, *Webster*, at 62, that is "at· the rate or in the proportions stated in the contract. . . .", *id.*, at 63. See *Brenner*, at 366-367. It is when the fee provision in the note is not explicit, but merely designates a "reasonable attorney's fee", that the court in which suit is filed has the right to determine what is a reasonable fee. In such case, the amount is not left "to the option or the conscience of the attorney." The parties, by specifying only a "reasonable attorney's fee" contemplated "a judicial proceeding by the court for the purpose of ascertaining the amount which may reasonably be charged up." *Johnson v. Phillips*, 143 Md. 16, 26-27 (1923). We find it clear, however, that, in a valid note, when the amount of the fee is specified, as by a percentage of the outstanding balance, the fee is ordinarily payable in the amount so designated. The Maryland cases are not to the contrary. So in *Johnson*, at 27, the Court pointed out that the clerk is authorized to exercise the power of entering judgment as to a cognovit note, "when the amount due appears on the instrument or can be rendered certain by calculation from its face." Or conversely, "the clerk had no power to include in the judgment or to name the amount of attorney's fee in a case of this kind, where the note does not fix the amount. . . ." *Id.*, at 28. The clear indication was that the clerk had such power when the note fixed the amount.

The provision in the note specifying the fee is enforceable as between the parties. It is only when other creditors are involved that, under certain circumstances, the amount of the fee may be questioned. "Such a provision rests upon a valid consideration, and is not fraudulent as to other creditors; unless the amount designated as attorney's fees is

grossly in excess of any reasonable amount, in which case the judgment, at least to the extent of such fees, is fraudulent and void *as against the other creditors of the defendant.*" (emphasis added) *Johnson,* at 26, quoting 1 *Black, Judgments,* § 75. We find it manifest from *Webster* that the attorney's fee in the note is payable by the defendant to the plaintiff "to the extent stipulated", 160 Md., at 62. Moreover, by iterating, at 61, the *Black* quote from *Johnson,* the Court affirmed the view that the reasonableness of the fee is subject to inquiry only as to other creditors of the defendant. It is when other creditors are involved that the specified fee may be fraudulent and void as to such creditors if it is "grossly in excess of any reasonable amount." In *Legum* the Court noted that the debtor agreed in his note to pay an attorney's fee designated. 180 Md., at 360. "It is not to be presumed that the [creditor] will not pay this money, when collected by it, to its attorney. If it does not, the attorney is the one to complain. *The [debtor] is not now in any position to raise a question about it.*" (emphasis added) *Id.,* at 361. In *Brenner,* 182 Md., at 366-367, the Court, quoting from *Webster,* at 63, observed that the attorney's fee is payable for services rendered as the judgment is collected, "and at the rate or in the proportions stated in the contract" when the fee is designated, or at the amount stated in the court's order when the note was not explicit as to the amount but called only for the payment of a "reasonable fee." In *Weiner,* 217 Md., at 126, the Court again referred to *Webster* in stating that attorney's fees in a confessed judgment note are payable "to the extent stipulated, for the expense of employing an attorney to collect by suit at law the principal debt." This is, of course, subject to the proviso expressed in *Webster,* at 63, that "if the attorney's fees exceeded an indemnity for actual out-of-pocket expenses, its entry would be beyond the authority of the attorney and that 'For the appropriation by the plaintiff of any part of the fees, or the payment of them without corresponding services, or the failure to allow proper credits, the errors can be corrected on motion made in the case by the defendant. . . .'" 217 Md., at 127-128. In

598

*American Nat. Bank,* the Court said, 247 Md., at 323: "No allowance is made for attorney's commissions unless services contemplated for such allowance and commensurate therewith are actually rendered." *Webster* was given as authority for that statement. It is manifest that the phrase "unless services contemplated for such allowance and commensurate therewith actually rendered" refers not to the reasonableness, between the parties, of the fee stipulated in the note, but to the actual performance of the services contemplated. The statement is preceded by this declaration, at 323: "An attorney's fee specified in a promissory note authorizing a judgment by confession for the amount due with interest and attorney's fees can be collected only upon confession of judgment as specified in the note." In other words, as *Webster* and the other cases make evident, the attorney's fee is not payable until the judgment confessed in the cognovit note is obtained with the intention to collect the indebtedness, but when so obtained, as between the parties, the fee is payable in the amount stipulated in the note. As the Court said in *Gaither,* 84 Md., at 640: "Fees for collection are understood to mean fees to be paid when the debt is collected." This is also the clear import of *Qualified Builders,* note 2, at 581-582 of 273 Md.[3]

We have one more observation. In *Webster,* at 61-62, the Court noted: "There being no question of the validity of the provision for the attorney's fee in this case, the only other question is as to the form the entry should take, and that is, whether the amount stipulated should be included in the judgment or entered as costs." It found no uniformity of practice in other jurisdictions or in this jurisdiction. *Id.,* at

---

**3.** We find apposite the rationale inherent in the discussion in *Gaither,* at 640, concerning attorney's commissions agreed to be paid upon collection of the debt secured by the mortgage: "It is no answer to the justice of [the attorneys'] claim to say that in this case no difficulties were interposed in the path of their duty. They were required to be prepared to encounter any difficulties which should arise, and to overcome them if they could. And it ought never to be forgotten that very .often the tact, skill, diligence and judgment of an attorney will prevent difficulties which might otherwise arise, and will enable him to secure his client's rights with facility and expedition. When he had accomplished what he undertook to do, it would be very unjust to disparage the value of his services, for the reason that he was able to do it readily and promptly without litigation."

62. It declared, at 62: "It is the better practice to enter the fees or commissions as a separate item and not to include the amount in the judgment for the principal obligation."

*Summary*

1) A stipulation in a promissory note for payment by the debtor of a specified attorney's fee for services in the collection of the debt upon default is valid.
2) The fee is payable upon performance of the services contemplated.
3) As between the parties to the note, payment of the attorney's fee may ordinarily be enforced in the amount specified in the note.

    a) the amount specified, however, may be diminished to the extent that the creditor is obligated to pay his attorney a lesser amount for the services contemplated.
    b) if the creditor is obligated to pay his attorney for such services an amount greater than that specified in the note, the creditor is out the excess.
    c) when the rights of other creditors of the debtor are involved, the attorney's fee may be fraudulent and void as against such creditors if the amount specified is grossly in excess of any reasonable amount.

4) When the note is not explicit as to the amount of the fee but merely specifies the payment of a "reasonable attorney's fee", the court may determine what is a reasonable fee.

## DECISION

The validity of the notes here is not now questioned. They contained an explicit provision as to the amount of the attorney's fee to be paid: "If, upon our default, suit is instituted, we agree to pay all court costs and an attorney's fee of 15% of the outstanding balance at the time of suit."

The services contemplated by the attorney were performed; suit was instituted and the principal obligation was paid. There was an agreement between Citizens and its attorney spelling out the fee to be paid in collection cases.[4] Under that agreement the fee payable by Citizens to its attorney was less than the notes called for. There were no rights of other creditors involved. Therefore, the provision as to the payment of an attorney's fee was enforceable as between Citizens and MIW as limited by the agreement between Citizens and its attorney. Thus, Citizens had the duty, which it recognized, to remit or credit the difference. It declared that it was prepared to do so.

To this point we have not mentioned the amounts involved. We have purposely refrained from setting out the figures to emphasize that the amounts have no bearing on the rights of the parties. What governs is the agreement in the notes and, when calling for an amount less than the amount stipulated in the notes, the agreement between Citizens and its attorney. The outstanding balance on the two notes, at the time suit was here instituted, was $1,004,268.40.[5] The attorney's fee, at 15% as stipulated, was $150,640.26. By the fee agreement between Citizens and its attorney, Citizens was obligated to pay the attorney $105,750.58. This latter amount is what was due Citizens by MIW as the attorney's fee. Whether that fee is $15 or $150,000 is of no moment. The crux of the matter is that MIW, by a valid and enforceable contract, agreed to pay Citizens a stipulated sum as a fee to Citizens' attorney for his services upon institution of suit to collect the balance on MIW's overdue indebtedness. MIW cannot now be heard to say that the fee it freely agreed to pay was not a reasonable one, or that it made a bad bargain. As far as MIW and Citizens are concerned, the stipulated fee may be diminished

---

4. The basis of the fee agreement between Citizens and its attorney was a letter from the attorney to Citizens dated 25 October 1974. It was an exhibit to an affidavit in support of the motion for summary judgment. The affidavit by the assistant to the President of Citizens verified the bank's agreement with its attorney.

5. Principal payments made during the pendency of the suit reduced the balance to $815,714.30, for which judgment was entered.

only to the extent that Citizens was obligated to pay the attorney a lesser amount. We note that MIW could have obviated the payment of any fee by paying its indebtedness as it promised to do. The full answer is in the precept declared by the Court of Appeals almost a century ago in *Maryland Fertilizing*, 60 Md., at 588. We quoted it at the beginning of this opinion, and we now repeat it:

> "Parties have the right to make their contracts in what form they please, provided they consist with the law of the land, and it is the duty of the courts so to construe them, if possible, as to maintain them in their integrity and entirety." [6]

> *Appeal as to judgment in the amount of $815,714.30 dismissed as moot; judgment for attorney's fee in the amount of $150,640.26 reduced to $105,750.58 by an allowance of $44,889.68 and as modified affirmed; costs to be paid by appellant.*

---

**6.** MIW relies to significant extent on Chestertown Bank of Maryland v. Walker, 163 F. 510 (4th Cir. 1908). We do not construe it as does MIW. The Circuit Court of Appeals was reviewing a proceeding in the District Court in Bankruptcy. Patently, therefore, other creditors were involved, so that the trial court properly considered, as we have indicated it should, the reasonableness of the fee stipulated in the promissory note. Further, the appellate court found nothing in the record to show that the bank ever employed an attorney to collect the debt, that an attorney ever did anything to collect, or that if he did, whether the bank contracted to pay him for his services the amount stipulated or a smaller sum, or that the fee stipulated was, in the light of rights of other creditors, reasonable. We think that *Chestertown* was fully in accord with the Maryland law as we have found it to be.